## IN THE CIRCUIT COURT FOR THE STATE OF MARYLAND
## WORCESTER COUNTY

ANJALI PHUKAN CHATELLE     *
3601 Captains Corridor     *
Greenbackville, VA 23356     *
    *
Plaintiff,     *     C-23-CV-21-000083
    *
v.     *     Civil Action No._____
    *
STATE OF MARYLAND     *
    *
Maryland Lottery     *
and Gaming Control Agency     *
Washington Park Business Center     *
1800 Washington Blvd., Suite 330     *
Baltimore, Maryland 21230     *
    *
Defendant.     *
    *
Serve on Maryland Office of the     *
Attorney General     *
200 St. Paul Pl 19th Fl     *
Baltimore, MD 21202     *

### COMPLAINT

NOW COMES Plaintiff, Ms. Anjali Chatelle ("Chatelle"), pro se, and files this Complaint

against the Maryland Lottery and Gaming Control Agency ("Defendant") and for reasons

therefore states, that upon information and belief:

### NATURE OF THE ACTION

1. This is an action concerning employment discrimination based on race, marital status, and/or

   gender.

### THE PARTIES

2.  Plaintiff, Anjali Phukan Chatelle (Anjali Reed Phukan at the time of the occurrence) is a U.S. citizen and individual residing in Greenbackville, Virginia and a citizen of the state of Virginia. Chatelle was a citizen of Maryland during the time of the occurrence, residing at her then home of 12907 Horn Island Rd, Ocean City, Maryland 21842. Chatelle is an Asian-American female.

3.  Defendant, Maryland Lottery and Gaming Control Agency, is a department of the Maryland State government with more than fifteen employees. Defendant oversees gaming operations at casinos throughout Maryland and is headquartered at 1800 Washington Blvd., Suite 330, Baltimore, Maryland 2130. Defendant is an employer as defined by Maryland Code, as an "employer" includes the state. Md. Code Ann., State Gov't § 20-601 (LexisNexis, Lexis Advance through legislation effective April 13, 2021, from the 2021 Regular Session of the General Assembly)

**JURISDICTION AND VENUE**

4.  Chatelle worked for Defendant from on or about May 25, 2016 until November 4, 2019. From on or about July 1, 2016 until late October 2019, Chatelle was stationed at Ocean Downs Casino (ODC), located at 10218 Racetrack Road, Berlin, Maryland, in Worcester County. (See Exhibit A – Position Description at Part 1, Item 10.)

5.  The nature of the action is covered by Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C.S. § 1981 and 42 U.S.C.S. § 2000, as well as Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606.

6.  The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $25,000.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. On or about December 12, 2019, Chatelle filed a complaint with the Maryland Commission on Civil Rights (MCCR) for color, marital status, race, retaliation, and sex, and the associated issue of constructive discharge. (See Exhibit B – Complaint to MCCR – First Page). MCCR general counsel and any assistant general counsel are special appointments in the State Personnel Management System. Md. Code Ann., State Gov't § 20-206 (LexisNexis, Lexis Advance through legislation effective April 13, 2021, from the 2021 Regular Session of the General Assembly).

8. On or about December 13, 2019, Chatelle filed a complaint, similar to that sent to MCCR, with the Defendant. (See Exhibit C – Tracking of Complaint to Defendant). Chatelle never received a response from Defendant from that complaint directly sent to Defendant.

9. On or about December 16, 2019, Chatelle filed a complaint with the Equal Opportunity and Employment Commission (EEOC) for race and gender, but when Chatelle went to the EEOC office to complete the complaint, the interviewing officer said it was a race-based claim. EEOC contacted Defendant regarding the complaint, and Defendant responded during the investigation period.

10. Chatelle received her right to sue letter from the EEOC on or about March 4, 2021 (per postmark on envelope), though the letter is dated February 25, 2021. (See Exhibit D – EEOC Right to Sue Letter and Exhibit E – Envelope from EEOC with Right to Sue Letter). 90 days from March 4, 2021 is June 2, 2021.

**FACTS**

11. Chatelle's original work location at ODC was about 4.9 miles from Chatelle's home, taking about 10 minutes to drive to and from work every day, and had no tolls.

12. In 2018, Chatelle was interested in doing activities with an ODC employee outside of work time and asked her supervisor if that was okay. Chatelle's supervisor at the time, who was an employee of Defendant, told Chatelle to ask the State Ethics Commission (SEC) for permission. Chatelle received permission to engage in out of work activities with the ODC employee.

13. Chatelle had satisfactory performance in her job up until the occurrence, which had included some telework days.

14. On or about September 12, 2019 Chatelle discussed via phone the situation with SEC who seemed to say it was okay to marry an ODC employee and still be stationed there, but to ask Defendant's ethics department for confirmation.

15. On or about September 13, 2019, Chatelle discussed via phone the situation with Organization Compliance Director for Defendant, James Butler. Over the next week, Butler told Chatelle he would look into the rules regarding this, but that as it was, engagement was not a reason for termination or changing work situations.

16. On or about September 23, 2019, Butler wanted Chatelle to obtain approval from the SEC in writing.

17. On or about October 6, 2019, Chatelle married an ODC employee.

18. Some time in October 2019, Chatelle was informed by other employees of Defendant of a similarly situated white male employee of Defendant, "Adam," who worked at the same work location married to a gaming employee also of the same work location. Chatelle was informed that Adam's manager and director for his department, both employees of Defendant, were aware of and approved of the marriage work relationship a while ago (years, months, and days unknown). Adam was a Compliance Officer.

19. On or about October 9, 2019, SEC gave Defendant guidance that Chatelle's marriage was an impermissible relationship and that an exception would likely not be allowed. (See Exhibit F – SEC emailed Opinion at second "Forwarded message" timestamped "Wed, Oct 9, 2019 at 12:51 PM").

20. On or about October 9, 2019, based on Defendant allegations in their EEOC response, Chatelle informed SEC of Adam's similarly situated relationship, such that SEC was aware at least as of October 9, 2019 of another Defendant employee stationed at ODC married to an ODC employee of the same work location as their spouse. SEC hence was aware of a similarly impermissible relationship as of October 9, 2019. (See Exhibit G – Defendant EEOC Follow-up – First Four Pages at 4).

21. On or about October 14, 2019, 30 days after the request for SEC determination, Chatelle was informed by Butler and Portillo that SEC had decided that her marriage was an impermissible conflict of interest and that she needed to be reassigned to Hollywood Casino Perryville (HCP) because of her marriage immediately. HCP was located about 135 miles from Chatelle's home then, taking about 2 hours and 20 minutes to drive to, plus an additional cost for tolls each way.

22. On or about October 14, 2019, Chatelle was told by her manager Sonia Portillo, an employee of Defendant, that Chatelle would need to leave in the next few hours and report to headquarters the next day. From then on, she would be reporting to the HCP, using her own travel time, and her own money for the additional gas and tolls with no reimbursement. (See Exhibit H - Resignation due to unreasonable change in work location – Message timestamped "Tue, Oct 15, 2019 at 3:24 PM").

23. On or about October 14, 2019, Chatelle informed Defendant's Portillo and Butler by phone that she was aware of the other marriage. Butler said that Adam's situation would have to be dealt with too now that they knew Defendant employees were not allowed to be working in the same casino as a gaming spouse.

24. Nowhere in Defendant's job description for Chatelle, nor Chatelle's job offer letter from Defendant does it seem to say that an employee can not be married to someone that works in gaming at that same work location. In addition, neither document discusses impermissible relationships for this position. (See Exhibit A – Position Description).

25. On or about October 15, 2019, Chatelle was overcome with stress from the long commute and took a sick day.

26. On or about October 15, 2019 evening, Chatelle was overcome with stress from the time planning of the regular long commute, and high expense for gas and tolls to travel to her new work, and the physical demand of driving that much every day, and felt she must resign else face intolerable, physically demanding, and expensive commutes. (See Exhibit H - Resignation due to unreasonable change in work location at 2 – email timestamped "Tue, Oct 15, 2019 at 5:27 PM").

27. On or about October 16, 2019, Chatelle was placed on administrative leave by Defendant, effective October 17, 2019, though her last official date of employment would be November 4, 2019.

28. On or about October 17, Defendant required Chatelle drive to Defendant headquarters and return all equipment and sign a Non-Participation agreement that they drafted before allowing her to leave on good terms. Note the Non-Participation agreement was stapled to the Receipt for State Property, such that it seemed to be required to be completed for the

termination process (See Exhibit I – Receipt for State Property and Non-Participation Agreement).

29. On or about December 11, 2019, while no longer working for Defendant, Chatelle learned that the white male employee of Defendant, married to an ODC employee, was still working at ODC while that employee of Defendant was still working at that same work location. Upon information and belief, Chatelle was in a substantially similar situation as another Defendant employee.

30. Chatelle filed a complaint with the Equal Opportunity and Employment Commission on December 16, 2019. Defendant responded to their notice from the EEOC of Chatelle's discrimination complaint. Defendant's response indicated that they asked SEC to review the similarly situated coworker on October 23, 2019. 124 days later, on February 10, 2020 -- the decision was made that Adam too constituted "an impermissible conflict of interest." Defendant's response letter, dated February 13, 2020, said they are "now working on a compliance plan" for him. (See Exhibit J –Defendant's Initial Response to EEOC Charge Including statement regarding Adam at 2).

31. The effect of Chatelle not having a salary from which she could draw her regular expenses led to her having to sell her house she could no longer regularly afford due to being unemployed from a full-time permanent position so abruptly. The lifestyle she had grown accustomed to was no longer possible due to the immediate decrease in wages and need to find and work more part time / seasonal positions. This was further exacerbated by the Covid-19 pandemic.

32. Prior to the constructive discharge, Chatelle worked part time elsewhere, and maintained that income, and after constructive discharge, Chatelle was able to increase part time work at

other employers some, but even then, still only part time with no full-time benefits such as
annual leave, education assistance, health benefits, life insurance, etc. that she had at her job
working for Defendant.

33. Chatelle lost retirement benefits and the cumulative effect of retirement benefits. One part
time employer of Chatelle provided some retirement benefit, but it was a seasonal job so not
full-time retirement benefits. In addition, she could have had that part time job while still a
state employee (Upon information and belief, people work in the tax industry during season
while still with full time employers). Hence Chatelle still lost some retirement benefits as
well.

34. Upon information and belief, Chatelle would have had the salary "step" increase(s) that other
full-time employees of Defendant received, as well as other bonuses including a "Covid-19
vaccine" bonus.

35. The reason for Chatelle leaving job also has negatively influenced her getting meaningful
future employment.

**Count I – Discrimination on the Basis of Race and/or Gender**

36. Employers may not discriminate against an employee with respect to their "compensation,
terms, conditions, or privileges of employment because of . . . [her] race, color, religion, sex,
age, national origin. 42 U.S.C.S. § 2000e-2 (LexisNexis, Lexis Advance through Public Law
116-344, approved January 13, 2021, with a gap of Public Law 116-283). These reasons, as
well as marital status are also protected in Maryland from the same actions. Md. Code Ann.,
State Gov't § 20-606 (LexisNexis, Lexis Advance through legislation effective April 13,
2021, from the 2021 Regular Session of the General Assembly).

37. Chatelle adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein and states:

38. Chatelle is, and at all times relevant hereto, an Asian-American female, a member of a protected class for her race, color, and gender. Race, color and/or gender was a motivating factor in Defendant's conduct – even favoritism or preferential treatment to a non-protected class can be construed as unlawful discrimination. (See EEOC v. Richmond of New York d/b/a Richmond Children's Center, No. 05-CV-8342 (SCR)(MDF) (S.D.N.Y. Sept. 11, 2006) (disciplining a protected member and not disciplining a non-protected class member is still discrimination). A causal connection exists between Defendant's actions in treatment of Chatelle and her race and/or gender. This is protected by law as it is disparate discrimination.

39. Defendants' actions in making Chatelle get a written SEC determination upfront was discriminatory and not the practice required by a non-protected class employee.

40. Defendant's actions in removing Chatelle from her work location with less than 24 hours notice of determination was discriminatory and unreasonable, especially in light of telework solutions in this day and age. Defendant did not relocate Chatelle to the casino of her preference, even though there was an audit position open there and Defendant had asked Chatelle which she would have preferred.

41. SEC gave a determination to Defendant in 30 days for Chatelle but based on assertions of Defendant in EEOC documents took 124 days – over four times as long to decide compared to Adam, the non-protected class employee of Defendant.

42. The aforesaid discriminatory treatment by Defendants toward Chatelle caused tangible harm to Chatelle in that they affected the terms, conditions, and privileges of her employment

unreasonably and severely because she would have to drive an intolerable amount every day to work on her own time and mileage costs and/or relocation costs.

43. Another similarly situated employee not of Chatelle's race and gender was not subject to the same conditions of employment as Chatelle.

44. Chatelle is further entitled to compensatory and punitive damages because Defendant's actions were intentional and done with deliberate indifference to Chatelle's federally protected rights. 42 U.S.C.S. § 1981 (LexisNexis, Lexis Advance through Public Law 116-344, approved January 13, 2021, with a gap of Public Law 116-283).

**Count II – Constructive Discharge**

45. Employers may not discharge an employee because of her "race, color, religion, sex, age, national origin." 42 U.S.C.S. § 2000e-2 (LexisNexis, Lexis Advance through Public Law 116-344, approved January 13, 2021, with a gap of Public Law 116-283). These reasons for discharge, as well as marital status, are also prohibited in Maryland. Md. Code Ann., State Gov't § 20-606 (LexisNexis, Lexis Advance through legislation effective April 13, 2021, from the 2021 Regular Session of the General Assembly).

46. Chatelle adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein and states:

47. Defendant's actions against Asian-American female Chatelle, member of a protected class, were discriminatory and led Chatelle to constructively discharge from her employment, as the sudden work location change was intolerable for commute time, physical demand of long drives, and high commute gas/toll expense.

48. That demanding Chatelle report to another location suddenly, when work can be done largely remotely, as evidenced by Chatelle's prior telework history, and that so many telecommuted

regularly during the Covid-19 emergency, was an unnecessary relocation and segregation from the community she lived in, where the other similarly situated non-protected class employee was not subject to the same immediate removal or segregation.

49. That demanding Chatelle abruptly report to a new work location very far away at her own time and expense unreasonably and severely impacted her finances, health well-being, and work-life balance, such that it led to constructive discharge.

50. Defendant's actions leading to her constructive discharge caused Chatelle monetary damages, in that she failed to receive compensation for her mortgage, health, and other life needs to which she had grown accustomed.

51. Chatelle lost retirement benefits, as well as earnings on retirement benefits.

52. Chatelle lost her employer subsidized good health insurance. In addition, suffered from lack of medical care she was accustomed to from the health plan she was on which had better benefits than that she has to pay an additional amount for under her husband's plan.

53. In addition to the above, Chatelle also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages as a result of the immediate relocation demand by Defendant.

54. Chatelle is further entitled to compensatory and punitive damages because Defendant's actions were intentional and deliberate indifference to Chatelle's federally protected rights. 42 U.S.C.S. § 1981 (LexisNexis, Lexis Advance through Public Law 116-344, approved January 13, 2021, with a gap of Public Law 116-283).

**Count III – Retaliation**

55. An employer may not retaliate against its employees because the individual has opposed a prohibited employer action i.e., discrimination and discriminatory constructive discharge.

Md. Code Ann., State Gov't § 20-606 (f) (LexisNexis, Lexis Advance through legislation

effective April 13, 2021, from the 2021 Regular Session of the General Assembly). It is

unlawful to discriminate or retaliate against Chatelle because she opposed employment

practices made unlawful by Title VII of the Civil Rights Act of 1964. 42 U.S.C.S. § 2000e-3

(LexisNexis, Lexis Advance through Public Law 116-344, approved January 13, 2021, with a

gap of Public Law 116-283).

56. Chatelle adopts and incorporates by reference all of the allegations set forth in the previous

paragraphs as if the same were fully set forth herein and states:

57. All such actions were adverse actions directed at Chatelle, and her race and gender were

motivating factors, as well as her actions in filing a complaint with the EEOC and otherwise

opposing Defendant's violations of Federal and State Civil Rights laws, including Title VII of

the Civil Rights Act of 1964, in violation of 42 U.S.C. 2000e.

58. There was no fair bargaining in her being required to sign the non-participation agreement.

59. Defendant never provided Chatelle with a mileage log to fill out her final trip information to

headquarters to deliver equipment, complete all final paperwork, and sign the non-

participation agreement they required her to complete. It was standard practice for Chatelle to

be reimbursed by Defendant for trips to headquarters at Defendant's request. Chatelle in the

past was emailed the form to her business email address, but no longer had access to that as

she was removed from the system abruptly upon placement on administrative leave. A

physical form was not produced for Chatelle at the time of final paperwork nor mailed to her.

The trip one way was about 143 miles.

60. Chatelle is further entitled to compensatory and punitive damages because Defendant's

actions were intentional and done with deliberate indifference to Chatelle's federally

protected rights. 42 U.S.C.S. § 1981 (LexisNexis, Lexis Advance through Public Law 116-344, approved January 13, 2021, with a gap of Public Law 116-283).

**IN SUMMARY**

61. Chatelle realleges and incorporates by reference its allegations in all above Paragraphs.

62. Chatelle and Defendant entered into an employment contract by which Chatelle performed all employment duties in satisfactory performance.

63. Defendant has discriminated against Chatelle, member of a protected class compared to another employee of Defendant in a non-protected class, in requiring Chatelle to obtain a written SEC notice.

64. Defendant also discriminated against Chatelle in how to affect the SEC notice, resulting in constructive discharge.

65. Chatelle demanded that Defendant fulfill its obligations by way of a complaint mailed directly to them, one made with MCCR, and one with EEOC, but Defendant refused.

66. As a result of Defendant's discrimination, constructive discharge, and retaliation, Chatelle has been damaged in an amount to be determined by this honorable Court, but no less than $25,001.

**PRAYER FOR RELIEF**

WHEREFORE, Chatelle respectfully requests that this honorable Court enter a judgment against Defendants, granting Chatelle the following relief:

A. The entry of a judgement in favor of Chatelle and against Defendant.

B. An order that Defendant pays Chatelle back pay and interest on back pay in the amount of $ 150,000.00 for lost salary, step increases, sick/annual/personal leave, bonuses, retirement, education benefit, health and life insurance, and any other benefits not listed.

C. An order that Defendant pays Chatelle compensatory damages for future pecuniary losses (including reduced cumulative retirement funds and decline in health) and punitive damages in the amount of $ 450,000.00.

D. An order that Defendant pays Chatelle back pay and interest on back pay in the amount of $83 for mileage to $4 for tolls to Defendant headquarters, to turn in equipment and sign other paperwork as requested by them that they still have not reimbursed.

E. Judgment against Defendant for Chatelle's fees and costs of the suit.

F. All other such relief as this honorable Court deems just and proper.


Dated: May 25, 2021

Respectfully submitted,

/s/ Anjali Phukan Chatelle

Anjali Phukan Chatelle

3601 Captains Corridor

Greenbackville, VA 23356

anjalireed@gmail.com

240-603-5541

Pro Se

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: May 25, 2021

Respectfully submitted,

/s/ Anjali Phukan Chatelle

Anjali Phukan Chatelle

3601 Captains Corridor

Greenbackville, VA 23356

anjalireed@gmail.com

240-603-5541

Pro Se

**Writ of Summons Request**

This is an initial filing and I respectfully request that the Clerk's office issue a Writ of Summons for service.

Dated: May 25, 2021
Respectfully submitted,
/s/ Anjali Phukan Chatelle
Anjali Phukan Chatelle
3601 Captains Corridor
Greenbackville, VA 23356
anjalireed@gmail.com
240-603-5541
Pro Se

C-23-CV-21-000083

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

**EXHIBIT E - ENVELOPE FROM EEOC FOR RIGHT TO SUE LETTER**



BALTIMORE MD 212

3 MAR 2021 PM 5 L

US EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
GEORGE H. FALLON FEDERAL BUILDING
31 HOPKINS PLAZA, SUITE 1432
BALTIMORE, MD 21201

21611-539030

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

☐ **COURT OF APPEALS** ☐ **COURT OF SPECIAL APPEALS**

✦ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Worcester County ▼
City/County

Located at 1 W Market St, Snow Hill, MD 21863

| | Court Address | |
| STATE OF MARYLAND | | Case No. C-23-CV-21-000083 |
| OR | | |

Anjali Phukan Chatelle                                    vs.        Maryland Lottery and Gaming Control Agency
Plaintiff/Petitioner                                                        Defendant/Respondent

## NOTICE REGARDING RESTRICTED INFORMATION PURSUANT TO RULE 20-201.1

**Please DO NOT use this form to file into the following case types: Adoption, Emergency Evaluation, Extreme Risk Protective Order (ERPO), Guardianship, Juvenile. By either rule or statute these case types are not subject to inspection. Therefore, no confidentiality form is necessary.**

Title of confidential submission: EXHIBIT G - DEFENDANT EEOC FOLLOW-UP − FIRST FOUR PAGES

☒ **1. RESTRICTED DOCUMENT - The entire document is not subject to inspection.**

☐ **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*

☐ **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*

☐ **Financial Statement:** filed pursuant to Rule 9-202, a Child Support Guidelines Worksheet filed pursuant to Rule 9-206, or a Joint Statement of Marital and Non-marital Property filed pursuant to Rule 9-207. *Rule 16-914(l)*

☐ **Hearing Closed to the Public:** recording/transcript of hearing closed to the public. *Rule 16-914(g)*

☐ **Marital Property:** Joint Statement of Marital and Non-Marital Property. *Rule 16-914(l)*

☐ **Marriage License Application:** until the effective date of the license. *Rule 16-912(c)*

☐ **Medical Report:** or other correspondence from a doctor or health care professional. *Rule 16-914(i)*

☐ **Parenting Plan/Joint Statement:** prepared and filed under Rules 9-204.1 and 9-204.2. *Rule 16-914(o)*

☐ **Peace Order Denied/Dismissed/Consented - Shielded:** case records shielded under Courts Article § 3-1510(b). *Rule 16-914(c)*

☐ **Pregnancy - Marriage License Application:** certification of pregnancy of a person under 18 from doctor or nurse practitioner in an application for a marriage license. *Rule 16-912(c)*

☐ **Presentence Investigation Report:** (confidential until entered into evidence) *Rule 16-914(f)(6)*

☐ **Protective Order Case:** petition is sealed until the earlier of service or denial of the petition. *Rule 16-914(b)*

☐ **Protective Order Denied/Dismissed/Consented - Shielded:** case records shielded under FL Article § 4-512(b)(2). *Rule 16-914(c)*

☐ **Refusal to Testify:** case record maintained under Code, Courts Article, § 9-106 of the refusal of an individual to testify in a criminal action against the individual's spouse. *Rule 16-914(f)(5)*

☐ **Sealed or Shielded:** (entire document) by court order. *Rule 16-934 & 16-914(k)(1)*

☐ **Sealing or Shielding Motion:** while pending, but not to exceed five (5) business days. *Rule 16-934 & 16-914(k)(2)*

☐ **Tax Returns:** state and federal tax returns. *Rule 16-914(j)*

☐ **Other:** _____ Rule or Statute: _____

☒ **DOCUMENT FROM A CONFIDENTIAL CASE TYPE FILED INTO A NON-CONFIDENTIAL CASE TYPE.**
Confidential Case type: ☐ Child adoption ☐ Emergency Evaluation ☐ ERPO ☐ Guardianship of a child
☐ Juvenile Court case record ☒ Other: (explain) Equal Employment Opportunity Commission (EEOC) case

☐ **2. CONFIDENTIAL INFORMATION - The document itself is subject to public inspection but contains confidential information that is not open to public inspection.**

That information consists of _____ .
(Give a description of the information and not the actual restricted information.)

The information is made confidential by Rule(s) _____ or by court order dated _____ .

Pursuant to Rules 20-201.1 and 1-322.1, accompanying the document is a redacted version that does not contain the confidential information.

| May 25, 2021 | /s/ Anjali Phukan Chatelle | N/A - Pro Se |
| Date | Signature | CPF ID No. |
| N/A | Anjali Phukan Chatelle | |
| Fax | Printed Name | |
| 204-603-5541 | 3601 Captains Corridor | |
| Telephone Number | Address | |
| anjalireed@gmail.com | Greenbackville, VA 23356 | |
| E-mail | City, State, Zip | |

**MDJ-008** (Rev. 01/2021)

☐ COURT OF APPEALS ☐ COURT OF SPECIAL APPEALS
☒ CIRCUIT COURT ☐ DISTRICT COURT OF MARYLAND FOR Worcester County
City/County
Located at 1 W Market St, Snow Hill, MD 21863
Court Address                C-23-CV-21-000083
Case No. _____

STATE OF MARYLAND
OR

Anjali Phukan Chatelle _____    vs.    Maryland Lottery and Gaming Control Agency
Plaintiff/Petitioner                                    Defendant/Respondent

## NOTICE REGARDING RESTRICTED INFORMATION PURSUANT TO RULE 20-201.1

**Please DO NOT use this form to file into the following case types: Adoption, Emergency Evaluation, Extreme Risk Protective Order (ERPO), Guardianship, Juvenile. By either rule or statute these case types are not subject to inspection. Therefore, no confidentiality form is necessary.**

Title of confidential submission: EXHIBIT J - DEFENDANTS INITIAL RESPONSE TO EEOC CHARGE INCLUDING STATEM

☒ **1. RESTRICTED DOCUMENT - The entire document is not subject to inspection.**
- ☐ **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*
- ☐ **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*
- ☐ **Financial Statement:** filed pursuant to Rule 9-202, a Child Support Guidelines Worksheet filed pursuant to Rule 9-206, or a Joint Statement of Marital and Non-marital Property filed pursuant to Rule 9-207. *Rule 16-914(l)*
- ☐ **Hearing Closed to the Public:** recording/transcript of hearing closed to the public. *Rule 16-914(g)*
- ☐ **Marital Property:** Joint Statement of Marital and Non-Marital Property. *Rule 16-914(l)*
- ☐ **Marriage License Application:** until the effective date of the license. *Rule 16-912(c)*
- ☐ **Medical Report:** or other correspondence from a doctor or health care professional. *Rule 16-914(i)*
- ☐ **Parenting Plan/Joint Statement:** prepared and filed under Rules 9-204.1 and 9-204.2. *Rule 16-914(o)*
- ☐ **Peace Order Denied/Dismissed/Consented - Shielded:** case records shielded under Courts Article § 3-1510(b). *Rule 16-914(c)*
- ☐ **Pregnancy - Marriage License Application:** certification of pregnancy of a person under 18 from doctor or nurse practitioner in an application for a marriage license. *Rule 16-912(c)*
- ☐ **Presentence Investigation Report:** (confidential until entered into evidence) *Rule 16-914(f)(6)*
- ☐ **Protective Order Case:** petition is sealed until the earlier of service or denial of the petition. *Rule 16-914(b)*
- ☐ **Protective Order Denied/Dismissed/Consented - Shielded:** case records shielded under FL Article § 4-512(b)(2). *Rule 16-914(c)*
- ☐ **Refusal to Testify:** case record maintained under Code, Courts Article, § 9-106 of the refusal of an individual to testify in a criminal action against the individual's spouse. *Rule 16-914(f)(5)*
- ☐ **Sealed or Shielded:** (entire document) by court order. *Rule 16-934 & 16-914(k)(1)*
- ☐ **Sealing or Shielding Motion:** while pending, but not to exceed five (5) business days. *Rule 16-934 & 16-914(k)(2)*
- ☐ **Tax Returns:** state and federal tax returns. *Rule 16-914(j)*
- ☒ **Other:** State Ethics Commission _____ Rule or Statute: MD Code Ann, Gen Prov. 5-301(b)(2)

☒ **DOCUMENT FROM A CONFIDENTIAL CASE TYPE FILED INTO A NON-CONFIDENTIAL CASE TYPE.**
**Confidential Case type:** ☐ Child adoption ☐ Emergency Evaluation ☐ ERPO ☐ Guardianship of a child
☐ **Juvenile Court case record** ☒ **Other: (explain)** Equal Employment Opportunity Commission (EEOC) case

☐ **2. CONFIDENTIAL INFORMATION - The document itself is subject to public inspection but contains confidential information that is not open to public inspection.**

That information consists of _____ .
(Give a description of the information and not the actual restricted information.)
The information is made confidential by Rule(s) _____ or by court order dated _____ .

Pursuant to Rules 20-201.1 and 1-322.1, accompanying the document is a redacted version that does not contain the confidential information.

| May 25, 2021 | /s/ Anjali Phukan Chatelle | N/A - Pro Se |
|---|---|---|
| Date | Signature | CPF ID No. |
| N/A | Anjali Phukan Chatelle | |
| Fax | Printed Name | |
| 204-603-5541 | 3601 Captains Corridor | |
| Telephone Number | Address | |
| anjalireed@gmail.com | Greenbackville, VA 23356 | |
| E-mail | City, State, Zip | |

MDJ-008 (Rev. 01/2021)

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

**EXHIBIT D - EEOC RIGHT TO SUE LETTER**

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Anjali Chatelle<br>P.O. Box 1330<br>Berlin, MD 21811 | From: | Baltimore Field Office<br>G.H. Fallon Federal Building<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD 21201 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | | Telephone No. |
|---|---|---|---|
| 531-2020-00841 | Victor Owolabi,<br>Investigator | | (410) 209-2218 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination In Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

02/25/21

_Rosemarie Rhodes_

| Enclosures(s) | Rosemarie Rhodes,<br>Director | (Date Issued) |
|---|---|---|

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

☐ **COURT OF APPEALS** ☐ **COURT OF SPECIAL APPEALS**
■ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Worcester County
_____
City/County ▼

Located at 1 W Market St, Snow Hill, MD 21863
_____
Court Address

Case No. C-23-CV-21-000083

**STATE OF MARYLAND**
**OR**

Anjali Phukan Chatelle                vs.    Maryland Lottery and Gaming Control Agency
_____                    _____
Plaintiff/Petitioner                                 Defendant/Respondent

## NOTICE REGARDING RESTRICTED INFORMATION PURSUANT TO RULE 20-201.1

**Please DO NOT use this form to file into the following case types: Adoption, Emergency Evaluation, Extreme Risk Protective Order (ERPO), Guardianship, Juvenile. By either rule or statute these case types are not subject to inspection. Therefore, no confidentiality form is necessary.**

Title of confidential submission: EXHIBIT B - COMPLAINT TO MCCR – FIRST PAGE

☒ 1. **RESTRICTED DOCUMENT - The entire document is not subject to inspection.**

☐ **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*

☐ **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*

☐ **Financial Statement:** filed pursuant to Rule 9-202, a Child Support Guidelines Worksheet filed pursuant to Rule 9-206, or a Joint Statement of Marital and Non-marital Property filed pursuant to Rule 9-207. *Rule 16-914(l)*

☐ **Hearing Closed to the Public:** recording/transcript of hearing closed to the public. *Rule 16-914(g)*

☐ **Marital Property:** Joint Statement of Marital and Non-Marital Property. *Rule 16-914(l)*

☐ **Marriage License Application:** until the effective date of the license. *Rule 16-912(c)*

☐ **Medical Report:** or other correspondence from a doctor or health care professional. *Rule 16-914(i)*

☐ **Parenting Plan/Joint Statement:** prepared and filed under Rules 9-204.1 and 9-204.2. *Rule 16-914(o)*

☐ **Peace Order Denied/Dismissed/Consented - Shielded:** case records shielded under Courts Article § 3-1510(b). *Rule 16-914(c)*

☐ **Pregnancy - Marriage License Application:** certification of pregnancy of a person under 18 from doctor or nurse practitioner in an application for a marriage license. *Rule 16-912(c)*

☐ **Presentence Investigation Report:** (confidential until entered into evidence) *Rule 16-914(f)(6)*

☐ **Protective Order Case:** petition is sealed until the earlier of service or denial of the petition. *Rule 16-914(b)*

☐ **Protective Order Denied/Dismissed/Consented - Shielded:** case records shielded under FL Article § 4-512(b)(2). *Rule 16-914(c)*

☐ **Refusal to Testify:** case record maintained under Code, Courts Article, § 9-106 of the refusal of an individual to testify in a criminal action against the individual's spouse. *Rule 16-914(f)(5)*

☐ **Sealed or Shielded:** (entire document) by court order. *Rule 16-934 & 16-914(k)(1)*

☐ **Sealing or Shielding Motion:** while pending, but not to exceed five (5) business days. *Rule 16-934 & 16-914(k)(2)*

☐ **Tax Returns:** state and federal tax returns. *Rule 16-914(j)*

☐ **Other:** _____ Rule or Statute: _____

☒ **DOCUMENT FROM A CONFIDENTIAL CASE TYPE FILED INTO A NON-CONFIDENTIAL CASE TYPE.**
Confidential Case type: ☐ Child adoption ☐ Emergency Evaluation ☐ ERPO ☐ Guardianship of a child
☐ Juvenile Court case record ☒ Other: (explain) MD Commission on Civil Rights (MCCR) case

☐ 2. **CONFIDENTIAL INFORMATION - The document itself is subject to public inspection but contains confidential information that is not open to public inspection.**

That information consists of _____.
(Give a description of the information and not the actual restricted information.)

The information is made confidential by Rule(s) _____ or by court order dated _____.

Pursuant to Rules 20-201.1 and 1-322.1, accompanying the document is a redacted version that does not contain the confidential information.

| | |
|---|---|
| May 25, 2021 | /s/ Anjali Phukan Chatelle    N/A - Pro Se |
| Date | Signature    CPF ID No. |
| N/A | Anjali Phukan Chatelle |
| Fax | Printed Name |
| 204-603-5541 | 3601 Captains Corridor |
| Telephone Number | Address |
| anjalireed@gmail.com | Greenbackville, VA 23356 |
| E-mail | City, State, Zip |

**MDJ-008** (Rev. 01/2021)

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

☐ **COURT OF APPEALS** ☐ **COURT OF SPECIAL APPEALS**
☒ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Worcester County ▼
Located at 1 W Market St, Snow Hill, MD 21863

City/County

Court Address

Case No. C-23-CV-21-000083

STATE OF MARYLAND
OR

Anjali Phukan Chatelle                vs.        Maryland Lottery and Gaming Control Agency

Plaintiff/Petitioner                                      Defendant/Respondent

## NOTICE REGARDING RESTRICTED INFORMATION PURSUANT TO RULE 20-201.1

Please **DO NOT** use this form to file into the following case types: Adoption, Emergency Evaluation, Extreme Risk Protective Order (ERPO), Guardianship, Juvenile. By either rule or statute these case types are not subject to inspection. Therefore, no confidentiality form is necessary.

Title of confidential submission: EXHIBIT I - RECEIPT FOR STATE PROPERTY AND DEMANDED NON-PARTICIPATION

☒ 1. **RESTRICTED DOCUMENT - The entire document is not subject to inspection.**

☐ **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*

☐ **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*

☐ **Financial Statement:** filed pursuant to Rule 9-202, a Child Support Guidelines Worksheet filed pursuant to Rule 9-206, or a Joint Statement of Marital and Non-marital Property filed pursuant to Rule 9-207. *Rule 16-914(l)*

☐ **Hearing Closed to the Public:** recording/transcript of hearing closed to the public. *Rule 16-914(g)*

☐ **Marital Property:** Joint Statement of Marital and Non-Marital Property. *Rule 16-914(l)*

☐ **Marriage License Application:** until the effective date of the license. *Rule 16-912(c)*

☐ **Medical Report:** or other correspondence from a doctor or health care professional. *Rule 16-914(i)*

☐ **Parenting Plan/Joint Statement:** prepared and filed under Rules 9-204.1 and 9-204.2. *Rule 16-914(o)*

☐ **Peace Order Denied/Dismissed/Consented - Shielded:** case records shielded under Courts Article § 3-1510(b). *Rule 16-914(c)*

☐ **Pregnancy - Marriage License Application:** certification of pregnancy of a person under 18 from doctor or nurse practitioner in an application for a marriage license. *Rule 16-912(c)*

☐ **Presentence Investigation Report:** (confidential until entered into evidence) *Rule 16-914(f)(6)*

☐ **Protective Order Case:** petition is sealed until the earlier of service or denial of the petition. *Rule 16-914(b)*

☐ **Protective Order Denied/Dismissed/Consented - Shielded:** case records shielded under FL Article § 4-512(b)(2). *Rule 16-914(c)*

☐ **Refusal to Testify:** case record maintained under Code, Courts Article, § 9-106 of the refusal of an individual to testify in a criminal action against the individual's spouse. *Rule 16-914(f)(5)*

☐ **Sealed or Shielded:** (entire document) by court order. *Rule 16-934 & 16-914(k)(1)*

☐ **Sealing or Shielding Motion:** while pending, but not to exceed five (5) business days. *Rule 16-934 & 16-914(k)(2)*

☐ **Tax Returns:** state and federal tax returns. *Rule 16-914(j)*

☒ **Other:** State Ethics Commission _____ Rule or Statute: MD Code Ann, Gen Prov. 5-301(b)(2)

☐ **DOCUMENT FROM A CONFIDENTIAL CASE TYPE FILED INTO A NON-CONFIDENTIAL CASE TYPE.**
**Confidential Case type:** ☐ Child adoption ☐ Emergency Evaluation ☐ ERPO ☐ Guardianship of a child ☐ Juvenile Court case record ☐ Other: (explain) _____

☐ 2. **CONFIDENTIAL INFORMATION - The document itself is subject to public inspection but contains confidential information that is not open to public inspection.**

That information consists of _____.

(Give a description of the information and not the actual restricted information.)

The information is made confidential by Rule(s) _____ or by court order dated _____.

Pursuant to Rules 20-201.1 and I-322.1, accompanying the document is a redacted version that does not contain the confidential information.

| | |
|---|---|
| May 25, 2021 | /s/ Anjali Phukan Chatelle    N/A - Pro Se |
| Date | Signature    CPF ID No. |
| N/A | Anjali Phukan Chatelle |
| Fax | Printed Name |
| 204-603-5541 | 3601 Captains Corridor |
| Telephone Number | Address |
| anjalireed@gmail.com | Greenbackville, VA 23356 |
| E-mail | City, State, Zip |

**MDJ-008** (Rev. 01/2021)

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

☐ **COURT OF APPEALS** ☐ **COURT OF SPECIAL APPEALS**
■ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** Worcester County ▼
Located at 1 W Market St, Snow Hill, MD 21863            *City/County*
                                    *Court Address*        C-23-CV-21-000083
**STATE OF MARYLAND**                              Case No. _____
OR
Anjali Phukan Chatelle                  vs.    Maryland Lottery and Gaming Control Agency
        *Plaintiff/Petitioner*                          *Defendant/Respondent*

## NOTICE REGARDING RESTRICTED INFORMATION PURSUANT TO RULE 20-201.1

**Please DO NOT use this form to file into the following case types: Adoption, Emergency Evaluation, Extreme Risk Protective Order (ERPO), Guardianship, Juvenile. By either rule or statute these case types are not subject to inspection. Therefore, no confidentiality form is necessary.**
Title of confidential submission: EXHIBIT H - RESIGNATION DUE TO UNREASONABLE CHANGE IN WORK LOCATION

☒ 1. **RESTRICTED DOCUMENT - The entire document is not subject to inspection.**
  ☐ **Child Abuse/Neglect:** record created by an agency concerning child abuse or neglect required by statute to be kept confidential. *Rule 16-914(d); Family Law Article, § 5-707; Human Services, § 1-202 and § 1-203*
  ☐ **Financial Information:** information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness. *General Provisions Article, § 4-336*
  ☐ **Financial Statement:** filed pursuant to Rule 9-202, a Child Support Guidelines Worksheet filed pursuant to Rule 9-206, or a Joint Statement of Marital and Non-marital Property filed pursuant to Rule 9-207. *Rule 16-914(l)*
  ☐ **Hearing Closed to the Public:** recording/transcript of hearing closed to the public. *Rule 16-914(g)*
  ☐ **Marital Property:** Joint Statement of Marital and Non-Marital Property. *Rule 16-914(l)*
  ☐ **Marriage License Application:** until the effective date of the license. *Rule 16-912(c)*
  ☐ **Medical Report:** or other correspondence from a doctor or health care professional. *Rule 16-914(i)*
  ☐ **Parenting Plan/Joint Statement:** prepared and filed under Rules 9-204.1 and 9-204.2. *Rule 16-914(o)*
  ☐ **Peace Order Denied/Dismissed/Consented - Shielded:** case records shielded under Courts Article § 3-1510(b). *Rule 16-914(c)*
  ☐ **Pregnancy - Marriage License Application:** certification of pregnancy of a person under 18 from doctor or nurse practitioner in an application for a marriage license. *Rule 16-912(c)*
  ☐ **Presentence Investigation Report:** (confidential until entered into evidence) *Rule 16-914(f)(6)*
  ☐ **Protective Order Case:** petition is sealed until the earlier of service or denial of the petition. *Rule 16-914(b)*
  ☐ **Protective Order Denied/Dismissed/Consented - Shielded:** case records shielded under FL Article § 4-512(b)(2). *Rule 16-914(c)*
  ☐ **Refusal to Testify:** case record maintained under Code, Courts Article, § 9-106 of the refusal of an individual to testify in a criminal action against the individual's spouse. *Rule 16-914(f)(5)*
  ☐ **Sealed or Shielded:** (entire document) by court order. *Rule 16-934 & 16-914(k)(1)*
  ☐ **Sealing or Shielding Motion:** while pending, but not to exceed five (5) business days. *Rule 16-934 & 16-914(k)(2)*
  ☐ **Tax Returns:** state and federal tax returns. *Rule 16-914(j)*
  ☐ **Other:** _____ Rule or Statute: _____
  ☒ **DOCUMENT FROM A CONFIDENTIAL CASE TYPE FILED INTO A NON-CONFIDENTIAL CASE TYPE.**
   **Confidential Case type:** ☐ Child adoption ☐ Emergency Evaluation ☐ ERPO ☐ Guardianship of a child
   ☐ Juvenile Court case record ☒ **Other: (explain)** Equal Employment Opportunity Commission (EEOC) case
☐ 2. **CONFIDENTIAL INFORMATION - The document itself is subject to public inspection but contains**
   **confidential information that is not open to public inspection.**

That information consists of _____ .
                    *(Give a description of the information and not the actual restricted information.)*
The information is made confidential by Rule(s) _____ or by court order dated _____ .
Pursuant to Rules 20-201.1 and 1-322.1, accompanying the document is a redacted version that does not contain the confidential information.

May 25, 2021                      /s/ Anjali Phukan Chatelle          N/A - Pro Se
        *Date*                      *Signature*                  *CPF ID No.*
N/A                              Anjali Phukan Chatelle
        *Fax*                      *Printed Name*
204-603-5541                      3601 Captains Corridor
    *Telephone Number*                      *Address*
anjalireed@gmail.com                  Greenbackville, VA 23356
        *E-mail*                      *City, State, Zip*

**MDJ-008** (Rev. 01/2021)

C-23-CV-21-000083

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

**EXHIBIT H - RESIGNATION DUE TO UNREASONABLE CHANGE IN WORK
LOCATION**


Maryland

Sonia Portillo -MLGCA- <sonia.portillo@maryland.gov>

## Tomorrow Notice?
10 messages

**Anjali Phukan -MLGCA-** <anjali.phukan@maryland.gov>                    Tue, Oct 15, 2019 at 3:07 PM
To: Sonia Portillo -MLGCA- <sonia.portillo@maryland.gov>, James Butler -MLGCA- <jbutler@maryland.gov>
Cc: AnjaliReed Phukan <anjalireed.phukan@gmail.com>

Good afternoon James and Sonia,

I still don't have an email with the thing I am being required to sign to continue working with MLGCA, stating I can not continue to work at Ocean Downs due to my husband's conflict of interest.

Do I need to see this document before I go to HQ tomorrow? I leave at 3:30 and I need to shut down the laptop soon and pack up before 3:30 (starting shut down at 3:15 for updates).
Can I sign or refuse to sign / request modifications tomorrow at headquarters?

Thank you in advance for your assistance in this matter. Should you have any questions or concerns, please feel free to contact me.

Sincerely,

*Anjali Reed Phukan*
*Gaming Auditor*
Maryland Lottery and Gaming
1800 Washington Blvd, Suite 330
Baltimore, MD 21230
Ocean Downs Casino Phone 410-641-0600 x3187
*mdlottery.com*
*anjali.phukan@Maryland.gov*
**CONNECT WITH US**
facebook | twitter | youtube
*Maryland Lottery and Gaming contributed $1.31 billion to the State of Maryland in FY2019.*
*Please play responsibly.*
Click here to complete a two-question customer experience survey.

**Sonia Portillo -MLGCA-** <sonia.portillo@maryland.gov>                    Tue, Oct 15, 2019 at 3:24 PM
To: Anjali Phukan -MLGCA- <anjali.phukan@maryland.gov>
Cc: James Butler -MLGCA- <jbutler@maryland.gov>, Michael Eaton -MLGCA- <michael.eaton@maryland.gov>

Hi Anjali,

Attached please find the agreement to be signed. As per our conversation earlier today, please report to HQ tomorrow 10/16. Please note that you wont be reimbursed for mileage as Hollywood will be your new place of work. Also, you will be expected to work your current schedule at Hollywood. Travel time will not be part of your working hours.

Please let me know if you have any questions.

Thanks,
[Quoted text hidden]
--
*Sonia Portillo*
*Gaming Division Audit Manager*

Maryland Lottery and Gaming Control Agency
1800 Washington Blvd, Suite 330

Baltimore, MD 21230

410-230-8843

*Maryland Lottery and Gaming contributed $1.252 billion to the State of Maryland in FY2018. Please play responsibly.*

📎 **Phukan Non-Participation Agreement Final 10.15.19.pdf**
10GK

**James Butler -MLGCA-** <jbutler@maryland.gov>                                        Tue, Oct 15, 2019 at 3:26 PM
To: sonia.portillo@maryland.gov

Your message

To: James Butler -MLGCA-
Subject: Re: Tomorrow Notice?
Sent: 10/15/19, 3:24:51 PM EDT

was read on 10/15/19, 3:26:35 PM EDT

**Anjali Phukan -MLGCA-** <anjali.phukan.gov>                                          Tue, Oct 15, 2019 at 5:27 PM
To: Sonia Portillo -MLGCA- <sonia.portillo@maryland.gov>
Cc: James Butler -MLGCA- <jbutler@maryland.gov>, Michael Eaton -MLGCA- <michael.eaton@maryland.gov>, Nathan
Warfield -MLGCA- <nathan.warfield@maryland.gov>

Dear Director Nathan Warfiled,  Director  Mike Eaton,
Manager Sonia Portillo, Supervisor  Eric Morgan, and
Director James Butler,

I respectfully am submitting my letter of resignation, with
my last day official day working Monday 11/04/2019.
Please accept this letter as notice of my resignation from
my position with MLGCA as gaming auditor, Internal
Auditor II.

My husband's conflict of interest requires my departure,
as travelling to Hollywood Casino daily with no mileage or
travel time reimbursement is unreasonable since I live in
Ocean City.

I can sign a conflict statement, soley for the duration of
my employment with MLGCA(Until 11/4/19), and that
notes my husband's correct title which is manager, not
director, as claimed in the emailed attachment I was given
at 3pm today.

It has been an honor to work under you all, and I will
greatly cherish my time with MLGCA and miss you all
greatly.

It has been a pleasure working with you and your team
over the last four years, from my first supervisor, Karry to

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

C-23-CV-21-000083

**EXHIBIT F - SEC EMAILED OPINION**

2/6/2020                    Maryland.gov Mail - Fwd: Ethics Commission - Non-participation guidance in matters involving a spouse or spouse's employer


Maryland

James Logue -MLGCA- <james.logue@maryland.gov>

## Fwd: Ethics Commission - Non-participation guidance in matters involving a spouse or spouse's employer
1 message

**James Logue -MLGCA-** <james.logue@maryland.gov>                                     Thu, Oct 10, 2019 at 1:56 PM
To: Michael Eaton -MLGCA- <michael.eaton@maryland.gov>

--------- Forwarded message ---------
From: **James Butler -MLGCA-** <jbutler@maryland.gov>
Date: Wed, Oct 9, 2019 at 1:23 PM
Subject: Ethics Commission - Non-participation guidance in matters involving a spouse or spouse's employer
To: Gordon Medenica -MLGCA- <gordon.medenica@maryland.gov>, Gina Smith -MLGCA- <gina.smith@maryland.gov>,
James Logue -MLGCA- <james.logue@maryland.gov>, Jim Nielsen -MLGCA- <jim.nielsen@maryland.gov>
Cc: Robert Fontaine -MLGCA- <robert.fontaine@maryland.gov>

All,

I just received this email and attachment from the Jennifer Allgair, General Counsel, to the Maryland State Ethics Commission.
You will note that the email is addressed to me and our employee, Anjail Phukan, so she is aware of its contents.

In a nutshell, now that Mrs. Phukan, has eloped and married an Ocean Downs employee, she is prohibited from working on any
matters in which her spouse or her spouse's employer has an interest.

JB

**James B. Butler**
*Managing Director, Organizational Compliance*
jbutler@maryland.gov
......................................

**Maryland Lottery and Gaming**
1800 Washington Blvd, Suite 330
Baltimore, MD 21230
410-230-8781
mdlottery.com
......................................

CONNECT WITH THE MARYLAND LOTTERY
facebook  |  twitter  |  youtube

*Maryland Lottery and Gaming contributed $1.311 billion to the state in FY2019.*
*Please play responsibly.*

Click here to complete a two-question customer experience survey.

--------- Forwarded message ---------
From: **Jennifer Allgair -Ethics-** <jennifer.allgair@maryland.gov>
Date: Wed, Oct 9, 2019 at 12:51 PM
Subject: Non-participation guidance in matters involving a spouse or spouse's employer

To: James Butler -MLGCA- <jbutler@maryland.gov>, Anjali Phukan -MLGCA- <anjali.phukan@maryland.gov>, Katherine Thompson (Ethics) <katherine.thompson@maryland.gov>

Mr. Butler and Ms. Phukan,

This email is in response an email I received from Mr. Butler and that Assistant General Counsel Katherine Thompson received from Ms. Phukan regarding the application of the participation restrictions and other conflict of interest provisions of the Public Ethics Law. It is my understanding that Ms. Phukan recently eloped and married an employee of Ocean Downs Casino. Ms. Phukan is an employee of Maryland Lottery and Gaming and is currently working as a Gaming Auditor at the Ocean Downs Casino. Due to Ms. Phukan's very recent marriage, it is important that she be removed from all State duties in which Ocean Downs Casino, her spouse's employer has a specific interest. I also recommend drafting into a Non-Participation Agreement for her to document that she will be removed from all matters where her spouse and her spouse's employer has a specific interest. Removing her from duties related only to her spouse's division of the Ocean Downs Casino is insufficient action pursuant to the requirements of Section 5-501 of the Public Ethics Law.

Section 5-501 of the Public Ethics Law prohibits State officials and State employees from participating in matters where a qualifying relative or a qualifying relative's employer has a specific interest in or is a party to the matter. The term "qualifying relative" is defined in the Public Ethics Law to includes a spouse, parent, child, and sibling.

In Opinion 80-17, the Commission defined "matter" as "any proceeding, application, submission, request for ruling, or other determination, contract, claim, case or other such particular matter..." The Commission defined "participate" as "participating as a State officer or employee in any proceeding, decision, determination, finding, ruling, order, grant, payment, award, license, contract, transaction, sanction or approval, or the denial therefore, or failure to act with respect thereto, personally and substantially through approval, disapproval, decision, recommendation, the rendering of advice, investigation or otherwise." The Commission has determined that "participation" includes attending meetings, holding discussions, reviewing materials and supervision, as well as hands-on activities involved in an individual's State duties. The Commission has addressed issues under 5-501 in Advisory Opinions 07-02, 09-01 and 09-02.

Section 5-501 of the law allows the Commission to grant an exception to allow participation by regulation or advisory opinion. The Commission has granted exceptions in situations where it finds that the overall circumstances and relationships were sufficiently remote to warrant an exception. ( See Opinion Nos. 90-2, 90-16, 04-02, 05-01, 05-02, and 07-02). The Commission's participation restriction exceptions have generally been given when the two individuals involved are in separate households and have separate financial holdings. The Commission has not previously granted an exception in a situation involving a spouse or dependent child. The Commission also looks to agency safeguards and restrictions to limit interaction between the qualifying relative's employer and the State employee at issue. When the Commission has allowed participation by advisory opinion or regulatory exception, the Commission has focused on the remoteness of the relationship and has considered such factors as the nature of the qualifying relative's employment, the nature of the relationship between the employee and the qualifying relative, the geographical distance between the relatives, any prior issues related to the participation, agency controls to prevent conflict and the employee's duties related to the matter.

The Commission's exception regulations may be reviewed in COMAR 19A.02.03.01, .02, and .03. The relevant factors the Commission is to consider are found in COMAR 19A.02.03.02 and are:

A.   The nature of the qualifying relative's relationship with the business entity;

B.   The nature of the relationship between the official or employee and the qualifying relative;

C.   The geographical distance between the official or employee and the qualifying relative;

D.   Any prior issues related to the official's or employee's participation in the matter;

E.   Agency controls and safeguards;

F.   Any involvement by the qualifying relative in the matter involving the official or employee; and

G.   The nature of the official's or employee's participation in the matter in relation to the official's or employee's overall duties

Based on the requirements of the Public Ethics Law and the Commission's past advice in similar matters, it is unlikely that Ms. Phukan would be granted any type of participation exception to allow her to have State duties for Maryland Lottery and Gaming related to Ocean Downs Casino, her spouse's employer. She is not prohibited from working for Maryland Lottery and Gaming in matters that involve other casinos or lottery matters so long as neither her spouse nor her spouse's employer has an interest in or is a party to those matters.

I recommend that the agency draft a Non-Participation Agreement to address these restrictions and outline a plan of action for removing Ms. Phukan from all matters at the agency involving her spouse and his employer. I have attached a template for your review and use.

Please contact me if you have any questions regarding this matter. Thank you both for your patience in this matter.

Jennifer Allgair
General Counsel
Maryland State Ethics Commission
410-260-7770

--
**Jim Logue**
Managing Director, Gaming

**Maryland Lottery and Gaming**
1800 Washington Blvd, Suite 330
Baltimore, MD 21230
410-230-5588
**mdlottery.com**

**CONNECT WITH US**
**facebook | twitter | youtube**

*Maryland Lottery and Gaming contributed $1.311 billion to the State of Maryland in FY2019. Please play responsibly.*

Click here to complete a three-question customer experience survey.

--------------------------------------------------------------------

draft non participation plan2.docx
23K

**EXHIBIT G - DEFENDANT EEOC FOLLOW-UP – FIRST FOUR PAGES**

**Maryland Lottery and Gaming Control Agency**

Larry Hogan, Governor ♦ Gordon Medenica, Director

Montgomery Park Business Center
1800 Washington Blvd., Suite 330
Baltimore, Maryland 21230



Tel: 410 230 8800
TTY users call Maryland Relay
www.mdlottery.com

April 29, 2020

**Via EEOC Portal only: https://nxg.eeoc.gov/rsp/login/jsf**
**No hard copy follows**

RE:    **Confidential Supplemental Position Statement of the**
       **Maryland Lottery and Gaming Control Agency**
       **EEOC Charge filed by Anjali Chatelle on December 16, 2019**
       **Charge No. 531-2020-00841**

To Whom It May Concern:

This letter sets forth the position of Respondent, the Maryland Lottery and Gaming Control Agency ("Agency"), in the referenced charge. The information contained herein and the documents attached hereto are confidential, are submitted only for the purpose of Respondent's position, and should in no way be construed as a waiver of any right or privilege. This letter supplements the Preliminary Response that the Agency submitted on February 13, 2020, which is incorporated by reference.

### I.    Introduction

The Agency's core mission is to generate revenue to help support the good causes of Maryland including education, public health, public safety, human resources, and the environment. The Agency is committed to maintaining a workplace free of discrimination and takes allegations of discrimination seriously.

Anjali Chatelle's[1] Charge of Discrimination (EEOC Form 5) (hereinafter "Charge") alleges that she has been subject to discrimination based on her "race (East-Indian)" and that she was "constructively discharge[d] on November 4, 2019."

As shown below, the Agency did not discriminate against Ms. Phukan whatsoever and took no action against her based on her race. Moreover, Ms. Phukan was not "discharged" from employment, "constructively" or otherwise. Accordingly, the Agency denies Ms. Phukan's allegation of discrimination and asserts that there is no basis for a determination of probable cause that any discriminatory act has occurred.

### II.    Facts

The Maryland Lottery and Gaming Control Commission ("Commission") licenses, regulates, and oversees the operations of the State's six video lottery facilities ("casinos"), and staff of the Agency supports the

---

[1] Ms. Chatelle was known as "Anjali Reed Phukan" at all times relevant to this Charge, and her name is referenced as such in all of the exhibits attached to this Supplemental Position Statement. Therefore, for ease of reference to the exhibits, when discussing the Facts, Respondent shall refer to Complainant as "Ms. Phukan" or "Complainant."

Confidential Supplemental Position Statement of the
Maryland Lottery and Gaming Control Agency
Charge No. 531-2020-00841
Page 2 of 7

Commission's functions. Md. Code Ann., State Gov't ("SG") § 9-1A-01, *et seq.* ("the Gaming Law"). Unless an individual holds a valid video lottery employee license issued by the Commission, the individual may not be employed by a casino as a video lottery employee. SG § 9-1A-14(a); Code of Maryland Regulations ("COMAR") 36.03.01.02.B(11), 36.03.02.12.A.

At all times relevant to this Charge, Ms. Phukan worked for the Agency as an Internal Auditor II and was assigned to Ocean Downs Casino. Exhibit 1 (MS-22 Position Description). In this capacity, one of Ms. Phukan's employment duties was to audit the various departments of the casino to which she was assigned. *Id.* Therefore, Ms. Phukan is required by her position to audit Ocean Downs Casino's Surveillance Department. *Id.*

On September 16, 2019, Ms. Phukan notified James Butler, the Agency's Managing Director, Organizational Compliance, that she planned to marry an Ocean Downs casino employee. Exhibit 2 (email entitled "Follow up on Ethics Concern (Self-Reporting)"). Ms. Phukan stated:

> I was under the impression I needed to resign before I got the [marriage] license, with a last day of before the actual ceremony, and after talking to you, I believe you wanted to look into possible work around situations for this.

> Please let me know if I need to turn in a letter of resignation with 2 weeks notice and take leave or go to [sic] different casino until my last day, or some other middle ground. Our planned wedding date is either Oct 24 so I can work til the end of the pay period ending Oct 22.

> I don't have another state job lined up yet, and so I may request unemployment, and so I'd like to leave on good terms under a compelling circumstance if possible.

*Id.*

On September 23, 2019, Ms. Phukan again contacted Mr. Butler to find out what to do about "my getting married situation to keep my job as it is, since my supervisor, manager, and the director of my department are all apparently ok with just having my supervisor do the surveillance audit when it comes up...." Exhibit 3 (email entitled "Follow up on relationship ethics").



Confidential Supplemental Position Statement of the
Maryland Lottery and Gaming Control Agency
Charge No. 531-2020-00841
Page 3 of 7

On September 25, 2019, Katherine Thompson, Assistant General Counsel, Maryland State Ethics Commission, replied to a September 23 email from Ms. Phukan and copied Mr. Butler. Exhibit 5 (email entitled "Fwd: Written Ethics Statement Request"). Ms. Phukan's September 23 email stated that she and the casino employee decided to get married, and that she wanted to confirm with Ms. Thompson, before getting the marriage license, that it would not be a conflict of interest. *Id.* Ms. Phukan stated that "[Ethics] counsel on duty said was OK as far as the state board was concerned, with our getting married, but to check with my agency." *Id.* She indicated that her supervisor, manager, and department director seemed amenable to a planned work-around solution to avoid a possible conflict of interest, but that the Agency's Organizational Compliance Director (Mr. Butler) wanted her to get something in writing from the Ethics Commission. *Id.*

On October 7, 2019, Ms. Phukan notified Mr. Butler and Michael Eaton, the Agency's Director of Audit and Regulatory Compliance, that she "eloped with a [sic] Ocean Downs Casino surveillance department employee yesterday." Exhibit 6 (email entitled "Ethics Notice"). Ms. Phukan asked if the Agency needed additional information from her, and noted that she did not yet have anything in writing from the State Ethics Commission. *Id.*

On October 9, 2019, Ms. Allgair notified Ms. Phukan and Mr. Butler of the State Ethics Commission's position regarding Ms. Phukan's marriage. Exhibit 7 (email entitled "Fwd: Non-participation guidance in matters involving a spouse or spouse's employer"). Ms. Allgair stated:

> Due to [her] very recent marriage, it is important that she be removed from all State duties in which Ocean Downs Casino, her spouse's employer[,] has a specific interest. I also recommend drafting into a [sic] Non-Participation Agreement for her to document that she will be removed from all matters where her spouse and her spouse's employer has a specific interest. Removing her from duties related only to her spouse's division of the Ocean Downs Casino is insufficient action pursuant to the requirements of Section 5-501 of the Public Ethics Law.

> Section 5-501 of the Public Ethics Law prohibits State officials and State employees from participating in matters where a qualifying relative or a qualifying relative's employer has a specific interest in or is a party to the matter. The term "qualifying relative" is defined in the Public Ethics Law to includes [sic] spouse, parent, child, and sibling. . . .

> . . . [T]he law allows the Commission to grant an exception to allow participation by regulation or advisory opinion. The Commission has granted exceptions in situations where it finds that the overall circumstances and relationships were sufficiently remote to warrant an exception....The Commission's participation restriction exceptions have generally been given when the two individuals involved are in separate households and have separate financial holdings. The Commission has not previously granted an exception in a situation involving a spouse or dependent child.

*Id.* (emphasis in original). Ms. Allgair made clear that Ms. Phukan is not prohibited from working for the Agency in matters that involve other casinos or the Agency's lottery division, so long as neither her spouse nor her spouse's employer has an interest in or is a party to those matters. *Id.* She recommended that the

Confidential Supplemental Position Statement of the
Maryland Lottery and Gaming Control Agency
Charge No. 531-2020-00841
Page 4 of 7

Agency draft a Non-Participation Agreement to address these restrictions, and she attached a sample Agreement. *Id.*

On October 9, 2019, Ms. Phukan replied to Ms. Alligair, stating that she "was made aware today that another MLGCA employee stationed at this Ocean Downs casino is married to an Ocean Downs casino employee as well," and that making her resign would be unfair. *Id.* She also stated that Nathan Warfield, the Agency's Director of Human Resources, was made aware of the other employee's marriage. *Id.*

On October 11, 2019, Ms. Phukan emailed her supervisors, acknowledging that she will need to transfer from Ocean Downs, and that her preference was Horseshoe Casino in Baltimore, followed by Hollywood Casino in Perryville. Exhibit 8 (email entitled "Transferring and Logistics").

On October 15, 2019, Ms. Phukan contacted Mr. Butler, and Sonia Portillo, the Agency's Gaming Division Audit Manager, seeking the document she needed to sign due to her "husband's conflict of interest," and asking whether she could modify or sign it the next day when she would be at Agency headquarters. Exhibit 9 (email thread entitled "Tomorrow Notice?"). Ms. Portillo sent her the draft Non-Participation Agreement and reminded her that she would not be reimbursed for mileage to Hollywood because that would be her new workplace, and that travel time would not be part of her work hours. *Id.*

Later on October 15, Ms. Phukan instead submitted her resignation to Ms. Portillo, copying Mr. Butler and Mr. Warfield, and identified her last work day as November 4. *Id.* As reasons for resigning, Ms. Phukan said: "My husband's conflict of interest requires my departure, as travelling to Hollywood Casino daily with no mileage or travel time reimbursement is unreasonable since I live in Ocean City." *Id.* She stated that she would sign a "conflict statement" to cover the time until November 4. *Id.* She said she cherished her time working in this position, and offered to help recruit and train her replacement. *Id.*

Rather than require Ms. Phukan to report to Hollywood for the remaining two weeks left of her Agency employment or allow her to continue to work at Ocean Downs in spite of the Ethics Commission's position, the Agency accepted her resignation and placed her on paid administrative leave until November 4. Exhibit 10 (October 16, 2019 Warfield Letter). On October 16, Ms. Phukan made slight edits to the draft Non-Participation Agreement, and signed it on October 17. Exhibit 11 (email entitled "Signed non participation agreement with strikes/edits"), and Exhibit 12 (Signed Non-Participation Agreement).



**EXHIBIT J - DEFENDANT'S INITIAL RESPONSE TO EEOC CHARGE INCLUDING
STATEMENT REGARDING ADAM**

## Maryland Lottery and Gaming Control Agency

Larry Hogan, Governor • Gordon Medenica, Director

Montgomery Park Business Center
1800 Washington Blvd., Suite 330
Baltimore, Maryland 21230



Tel: 410 230 8800
TTY users call Maryland Relay
www.mdlottery.com

February 13, 2020

<u>Sent via EEOC Respondent's Portal only/no hard copy follows</u>
Baltimore Community Relations Commission
7 E. Redwood St. 9th Floor
Baltimore, Maryland 21202

RE:    **Preliminary Response of the Maryland Lottery and Gaming Control Agency to
EEOC complaint filed by Anjali Chatelle on December 15, 2019
Charge No. 531-2020-00841**

To Whom It May Concern:

The Maryland Lottery and Gaming Control Agency ("MLGCA") absolutely, completely, and vehemently denies that there has been <u>any</u> discrimination whatsoever against Anjali Chatelle (formerly Phukan).

**Regarding Anjali Chantelle.**
The MLGCA licenses, regulates, and oversees the operations of the State's six casinos, and it issues licenses to all casino employees. An individual cannot work as a casino employee without holding a MLGCA-issued gaming or non-gaming license.

The MLGCA made decisions about Ms. Chantelle and her employment assignment based on the advice of the State Ethics Commission. Ms. Chatelle was employed by MLGCA as a Gaming Auditor at Ocean Downs Casino. One of her duties as an auditor for MLGCA was to monitor the surveillance department operated by the casino. On October 7, 2019, she advised MLGCA that, the previous day, she had eloped with the individual employed by Ocean Downs Casino who is manager of its surveillance department. This individual holds a gaming license issued by the MLGCA. On October 9, 2019, the State Ethics Commission advised MLGCA that the State's Public Ethics Law prohibits State employees from participating in matters where a qualifying relative or a qualifying relative's employer has a specific interest in or is a party to the matter (October 10, 2019 email thread, attached). In short, the State Ethics Commission advised MLGCA that Ms. Chatelle's assignment to the Ocean Downs Casino, where her spouse was employed, would constitute an impermissible conflict of interest.

At the suggestion of the Ethics Commission, MLGCA removed Ms. Chantelle from all matters concerning Ocean Downs Casino, and reassigned her to work at Hollywood Casino, where a Gaming Auditor vacancy existed. Rather than accept the reassignment, on October 15, 2019, Ms. Chantelle notified MLGCA that she was resigning her employment.

**Regarding Adam Milchak.**
Likewise, MLGCA will make decisions about Adam Milchak and his employment assignment based on the advice of the State Ethics Commission. Mr. Milchak is employed by MLGCA as a Casino Compliance Representative at Ocean Downs Casino. His wife works at Ocean Downs Casino as a bartender, and holds a non-gaming license issued by MLGCA. On October 23, 2019, the MLGCA asked the State Ethics Commission to review the Milchaks' situation. It was the Agency's belief that ethics considerations for the Milchaks were vastly different than for Ms. Chantelle and her husband, because the Milchaks' job functions did not intersect whatsoever.

On February 10, 2020, the MLGCA received the State Ethics Commission's advice that Adam Milchak's participation in MLGCA matters involving his spouse's employer, Ocean Downs Casino, constituted an impermissible conflict of interest (February 10, 2020, Confidential State Ethics Commission advice, attached). The State Ethics Commission has requested that MLGCA provide it with a plan and timeline for compliance with the advice. MLGCA has notified Mr. Milchak of the State Ethics Commission advice and request, and is now working on a compliance plan. Such a plan most likely will involve either reassigning Mr. Milchak to another casino, or he wife resigning from her position at Ocean Downs.

For the reasons set forth in MLGCA's request for extension of time within which to submit a response, there is not sufficient time for counsel to prepare and submit a complete Agency position statement. The MLGCA shall submit a supplemental, complete position statement directly.

Sincerely,

Nathan A. Warfield
Director of Human Resources


Attachment 1:  October 10, 2019 email thread
Attachment 2:  February 10, 2020, Confidential State Ethics Commission advice (Confidential
               pursuant to Maryland Code Ann., Gen Prov. § 5-301(b)(2))


cc:    James Butler, EEOC Representative and Managing Director, Organizational Compliance
       John Mooney, Managing Director, Regulatory Oversight

C-23-CV-21-000083

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

**EXHIBIT I - RECEIPT FOR STATE PROPERTY AND DEMANDED NON-PARTICIPATION AGREEMENT STAPLED TO THE RECEIPT FOR STATE PROPERTY**

# Maryland Lottery and Gaming Control Agency

Larry Hogan, Governor • Gordon Medenica, Director

Montgomery Park Business Center
1800 Washington Blvd., Suite 330
Baltimore, Maryland 21230

Tel: 410-230-8800
TTY users call Maryland Relay
www.mdlottery.com

## Receipt for State Property

Employee's Name:  _Anjali Phukan_

Agency:  __Maryland Lottery and Gaming Control Agency__

If you have any State property or equipment, you must return those items to your direct manager/supervisor prior to leaving this Agency. Your manager will inspect the returned equipment and record the pertinent data for each item below. Please keep a copy of the signed receipt for your records. Managers will forward the completed form to Human Resources.

Laptop(s)  _Yes_

~~Cell Phone(s)~~

~~State Vehicle~~

Key(s)  _Yes_

Access Card / Key Fob  _Yes_

State ID (if leaving State service)  _Yes_

Other  _Ocean Down office key_

I certify that the above items were received on:  _10/17/2019_
(Date)

Received by:  _Sonic Pashko_

Contact Phone Number:  _301 2000717_

COMMENTS (note any damaged equipment):  _N/A_
_Ocean's Daw ID returned to the casino_

cc: Employee

# MARYLAND LOTTERY & GAMING
## NON-PARTICIPATION AGREEMENT

I, Anjali Reed Phukan, work for the State of Maryland at the Maryland Lottery and Gaming Control Agency ("MLGCA"), and I am currently assigned to the Ocean Downs Casino as a Gaming Auditor. On October 6, 2019, I eloped and am now married to Mark Chatelle, who is the Manager of Surveillance at Ocean Downs Casino, which is owned and operated by Old Bay Gaming & Racing, LLC and which is a subsidiary of Churchill Downs, Inc., both of whom are regulated and licensed by the Maryland Lottery and Gaming Control Commission ("MLGCC").

I understand that due to my spouse's employment with Ocean Downs and his possession of a gaming license issued by MLGCC, there is a possibility that a conflict of interest could arise if I were required to participate in an audit or investigate an incident in which my spouse or his department were involved. Additionally, there may otherwise be a perceived conflict of interest if affirmative steps are not taken to prevent my involvement or participation in any matter, meeting, discussion, review, audit or investigation in which my spouse, his department or his employer may be involved.

## PURPOSE OF AGREEMENT

Therefore, this non-participation agreement is providing workplace requirements to comply with the conflict of interest provisions of the Maryland Public Ethics Law ("Ethics Law") in light of my State employment with MLGCA and my spouse's employment with Ocean Downs Casino, which holds a Video Lottery Operation License issued by MLGCC, an entity to which I am assigned to review, monitor, and audit on a regular basis.

## SUMMARY

As State employees, we are bound to conduct ourselves in a manner that is free of the existence or perception of any conflict of interest. The Ethics Law sets standards of ethical conduct, and it is crucial that every employee adhere to these standards. The Ethics Law is there to help us make decisions that are in the best interest of the State and free of influence from parties that may benefit from our decisions and work. We are required to conduct ourselves so that we do not even appear to be improperly influenced.

## ANALYSIS

Section 5-501 of the Ethics Law prohibits a State employee from participating in matters in which an outside employer has a specific interest. I am a State of Maryland employee, and my spouse is a licensed gaming employee of Ocean Downs Casino. My specific job functions may require me to audit the department that my husband directly manages. As such, I can no longer perform my auditing duties and responsibilities at Ocean Downs because my spouse has an interest in the same casino that I am assigned to audit. Therefore, I must be removed from all State duties and responsibilities in which Ocean Downs Casino, my spouse's employer, has a specific interest. In

order to ensure MLGCA and MLGCC comply with the Ethics Law, we are memorializing this non-participation agreement to avoid a conflict or appearance of a conflict of interest.

## WORK PLAN

I understand and acknowledge that:

1. As a MLGCA Auditor, I am prohibited from performing the following auditing duties and responsibilities concerning all gaming operations, including the Surveillance Department, at Ocean Downs Casino, which include:

   A. Analyze, document, and perform testing of minimum internal controls and business processes at facilities;

   B. Review and evaluate the adequacy and effectiveness of internal controls;

   C. Review and evaluate compliance with internal control policies and procedures approved by the Maryland Lottery Commission;

   D. Conduct interviews with casino personnel to ensure that the casino is complying with documented internal accounting controls;

   E. Assist the Audit Supervisor in making decisions and recommendations related to audit procedures performed at gaming facility; and

   F. Assist the Audit Supervisor in making recommendations to the facility operator related to observations noted during audits and other observations.

2. I am prohibited from participating in all auditing duties and responsibilities outlined above at Ocean Downs Casino.

3. The participation restrictions under §5-501 of the Public Ethics Law are broad and prohibit my participation in discussions, meetings, supervision, as well as decision making in any matters in which Ocean Downs Casino has a specific interest.

4. Any and all matters, to include interactions and participation, with Ocean Downs employees now will be handled by my supervisor, Eric Morgan, Gaming Audit Supervisor, located at MLGCA's Headquarters in Baltimore, MD.

5. This agreement will be circulated to my supervisors so when incidents or matters arise at Ocean Downs involving my spouse, Mark Chatelle, or his employer, Ocean Downs Casino, I must immediately recuse myself and completely remove myself from the situation.

6. I shall not have any involvement in any aspect of any review, report, or investigation that may involve my spouse, Mark Chatelle, or his employer, Ocean Downs Casino.

2

Non-Participation Agreement
Anjali Reed Phukan

7. In the event an incident arises that may involve my spouse, Mark Chatelle, or his employer, Ocean Downs Casino, I shall immediately contact my immediate supervisor so that he/she intervenes accordingly.

8. I understand that effective, October 16, 2019, I am being reassigned to Hollywood Casino Perryville, Perryville, MD, as the Gaming Auditor, until November 4, 2019

As a State employee, I am also aware of additional restrictions under the Public Ethics Law. Section 5-506 of the Public Ethics Law prohibits a State employee or official from intentionally using the prestige of public position for private gain or for the private gain of another. Additionally, Section 5-507 of the Public Ethics Law prohibits a State employee or official from disclosing or using confidential information acquired by reason of the employee or official's public position, which is not available to the public, for personal economic benefit or the economic benefit of another.

Signature:   Anjali Reed Phukan                     Date Signed   10/17/19

Signature:   Print Witness' Name                    Date Signed   10/17/2019

3

E-FILED; Worcester Circuit Court
Docket: 5/25/2021 9:44 PM; Submission: 5/25/2021 9:44 PM

C-23-CV-21-000083

## EXHIBIT A - POSITION DESCRIPTION

STATE OF MARYLAND
DEPARTMENT OF BUDGET AND MANAGEMENT
OFFICE OF PERSONNEL SERVICES AND BENEFITS
301 West Preston Street
Baltimore, Maryland 21201

*file*

# POSITION DESCRIPTION

REVIEW INSTRUCTIONS PRIOR TO COMPLETION

| PART I. IDENTIFYING POSITION INFORMATION |
|---|

ITEMS 1-6 to be completed by Agency Personnel Office.

| 1. | PIN: 088603 | 2. | CLASS CODE/GRADE 4373/16 |
|---|---|---|---|
| 3. | SERVICE SS | 4. | IS THIS POSITION DESIGNATED AS A SPECIAL APPOINTMENT? NO |
| 5. | OVERTIME STATUS N | 6. | AGENCY APPROPRIATION CODE 240400 |

ITEMS 7-13 to be completed by the supervisor.

| 7. | Current Employee's Name, if applicable | Anjali Phukan |
|---|---|---|
| 8. | Class Title | Internal Auditor II |
|  | Working Title, if different | Gaming Auditor |
| 9. | Department or Agency Name | Maryland State Lottery Agency |
|  | Division, Unit or Section | AFO/VLT |
| 10. | Work Location/Address | 10218 Racetrack Road, Berlin, MD 21811 |
| 11. | Name of Immediate Supervisor | Karry Pifer |
|  | Title of Immediate Supervisor | Internal Audit Supervisor |

12. Work Schedule: (Check all that apply)

☒ Permanent Day Shift          ☐ Rotating Shift

☐ Permanent Evening Shift      ☒ Full Time

☐ Permanent Night Shift        ☐ Part Time

☐ Other (Explain) _____

13. If applicable, how long has the current employee been performing the duties listed below?

**PART II.     POSITION FUNCTIONS**

**ITEMS 1-7**   If additional space is required, attach a separate sheet.

1.  MAIN PURPOSE OF THE JOB:  Briefly describe the main purpose of this position and how
    it related to the mission of the agency.
    Conduct compliance, economy and efficiency, and program results of the Lottery and to
    review, evaluate and test internal controls in place at the video lottery casinos.

ESSENTIAL JOB FUNCTIONS AND OTHER ASSIGNED DUTIES - List duty and
    responsibility statements that identify the essential job functions and other assigned duties.
    Essential job functions are the fundamental job duties of a position that if not performed will
    alter the job.  (Identify **essential job functions** by highlighting, **underlining**, etc.)

| % of Time and/or Weight of Importance | Job Duty |
|---|---|
| 70 | Work under supervision of Audit Supervisor in conducting scheduled audits of Casinos, Bingo Halls, and VFWs (planning, fieldwork, reporting, follow-up).  Assist Audit Supervisor with development of audit documentation (i.e., audit scope and objectives, audit programs, checklists, and testing work papers).  This position will answer audit objectives, obtain sufficient and appropriate evidence, support conclusions and form appropriate recommendations that are auditable and feasible.  Audits performed in all areas of casino operations (slots, table games, accounting, cage, responsible gambling, marketing, surveillance, security, revenue audits, IT, etc.).  Limited scope audits performed at Bingo Hall and VFW facilities. |
| 5 | Assist Audit Supervisor with preparation and review of audit reports. |
| 10 | Travel to Casino, Bingo Hall, and VFW facilities to conduct audits. |
| 10 | Analyze, document, and perform testing of business processes at facilities.<br><br>• Review and evaluate the adequacy and effectiveness of internal controls.<br><br>• Review and evaluate compliance with internal control policies and procedures approved by the Maryland Lottery Commission.<br><br>• Conduct interviews with casino personnel to ensure that the casino is complying with documented internal accounting controls. |
| 5 | Assist in daily administration of the Audit Department:<br><br>• Provide status reports to Audit Supervisor on a weekly basis |



• Perform special projects as assigned.

3. LEVEL, FREQUENCY AND PURPOSE OF WORK CONTACTS: List the contacts that this position has with individuals within the division, agency and department as well as other State agencies, other government agencies, private companies, clients, customers, vendors and the general public. These contacts may be in person, in writing or by telephone. Indicate how often the contact occurs. State the purpose of each contact, for example, to provide information, to explain procedures or decisions, to persuade or negotiate.

Maryland Lottery Commission
Director of Lottery
Assistant Director of Lottery
Director of Audit & Regulatory Compliance
VLT Manager
G-Tech
Facility management and staff

DECISIONS AND RECOMMENDATIONS:      List the decisions and recommendations that this position makes which are necessary to carry out essential job functions. State to whom recommendations are made.

This position will assist the Audit Supervisor in making decisions and recommendations related to audit procedures performed at gaming facilities to the Director of Audit and Regulatory Compliance. This position will assist the Audit Supervisor in making recommendations to facility operators related to observations noted during audits and other observations.

4. EQUIPMENT USED - List equipment, machinery and tools used to complete this job, e.g. personal computer, calculator, typewriter, hand tools, measuring devices and lab equipment.

5. NATURE OF SUPERVISION RECEIVED - Check the type of supervision that is given to this position. See instructions Part II, Item 6 for definition of terms.

☐ Close Supervision
☐ Moderate Supervision
☒ General Supervision
☐ Managerial Supervision

WORKING CONDITIONS:  (Check all that apply)

☐    Work involves exposure to uncomfortable or unpleasant surroundings.  (Explain)

☐    Work involves exposure to hazardous conditions which may result in injury.  (Explain)

☐    Work involves special physical demands such as lifting 50 pounds or more, climbing ladders, etc.  (Explain)

3. Displays a professional demeanor.

Quality of Work
1. Understands clearly the licensee's internal controls/accounting procedures.
2. Follows Audit Division's workpaper guidelines and presentation techniques.
3. Prepares workpapers that are logical and support the audit program.
4. Derives findings from test work.
5. Presents practical and effective recommendations to address the findings.
6. Minimizes review time by supervisor and director.

Timeliness of Work
1. Plans, organizes and completes pre-fieldwork according to instructions.
2. Provides timely status reports and keeps supervisor and director informed of possible delays.
3. Meets overall project deadline.

Decision Making and Judgment
1. Recognizes and promptly advises superiors of problems or issues.
2. Demonstrates knowledge and use of current information technology equipment, programs, and services in order to effectively and efficiently perform the engagement/project.
3. Draws sound conclusions from test work.
4. Ensures that the test procedure is relevant to the audit objectives.
5. Prepares alternate procedures when needed.

Writing Skills
1. Prepares reports, memos, procedures and flowcharts in accordance with current formats.
2. Prepares written documents in concise, complete, clear, organized language free of punctuation, grammar and spelling errors.
3. Demonstrates a desire to improve by using available resources such as spelling and grammar checking tools and attending relevant training sessions.

Oral Communications
1. Communicates in an efficient, effective and polite manner with the client and fellow auditors.
2. Communicates complex processes in clear terms that the listener can understand.
3. Keeps the conversation concise and relevant.

Flexibility
1. Has a positive, can-do approach to the work, and is supportive of the Auditor's Office.
2. Works together with others as a team player.
3. Accepts changes in assignments willingly.

Initiative and Need for Supervision
1. Takes responsibility for work performed.
2. Finds innovative ways to help and improve the office being reviewed.  Reports valid areas of risk to the manager, explaining why it's a risk and what audit procedures and techniques should be incorporated into the audit program.
3. Completes audits with little supervision.

PART V   SIGNATURES

The following signatures indicate acknowledgment by the employee of the information on this form, when applicable, and approval by the supervisor and appointing authority.

☐    Work requires use of protective equipment such as goggles, gloves, mask, etc. (Explain)

## PART III    RESPONSIBILITIES FOR THE WORK OF OTHERS

This section should be completed if this position is responsible for the work of others. This includes full and part-time permanent employees, contractual or emergency employees, volunteers, reimbursable or loaned employees. If additional space is required, attach a separate sheet.

NATURE AND LEVEL OF RESPONSIBILITY FOR WORK OF OTHERS:
A supervisor assigns and reviews the work of other, trains employees, recommends the selection, promotion and termination of employees, approves leave and signs time cards, signs annual performance evaluations, determines and resolves procedural problems within the unit, serves as spokesperson for subordinates, explains policies and directives from management and issues formal disciplinary reminders, warnings and reprimands.

A lead worker assigns and reviews the work of others, instructs and motivates worker, is available for immediate assistance or review and performs the work of the classification.

a)   Does this position supervise employees?         ☐ Yes         ☒ No

b)   Does this position lead employees?         ☐ Yes         ☒ No

If yes, to a or b, list the names and classifications of the employees that this position supervises or leads.

d)   Check the ways that this position supervises or leads these employees. (check all that apply).

☐ Assigns and reviews work
☐ Approve leave, sign time card
☐ Sign annual performance ratings
☐ Interview & select new employees
☐ Train employees
☐ Discipline employees (counsel, recommend suspension & termination) Do any of the employees supervised have supervisory responsibility? If so, list them and the names and classifications of those they supervise or attach an approved organization chart.

## PART IV    PERFORMANCE STANDARDS

Application of Job Knowledge:
1. Limits the number of review comments by the manager and director.
2. Limits the need for supervision by the audit supervisor and/or director.
3. Prepares audit documentation as needed with little supervision and correction.
4. Produces effective ICQs, flowcharts, audit programs, procedural documentation, etc.
5. Understands statues and policies pertaining to the area being examined.
6. Applies auditing theory to engagement/project.

Professional Conduct
1. Receives no complaints related to one's professionalism.
2. Establishes effective relationships with the auditee's.

Employee's Signature

Date 5/25/2016

Supervisor's Signature

Date 5/5/16

Appointing Authority or Designee

Date

Form MS-22
Revised 10/96