IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANJALI CHATELLE,                        *

    Plaintiff,                      *

v.                                      *        Civil Action No. GLR-21-1734

THE STATE OF MARYLAND,                  *
MARYLAND LOTTERY AND
GAMING CONTROL AGENCY,                  *

    Defendant.                      *

                           ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant State of Maryland, Maryland Lottery and Gaming Control Agency's ("MLGCA" or the "Agency") Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21).[1] The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion.

## I.       BACKGROUND[2]

### A.     Factual Background

Plaintiff Anjali Chatelle (née Phukan) was employed by MLGCA from May 25, 2016 until November 4, 2019. (Am. Compl. ¶ 4, ECF No. 17). From July 2016 until October 2019, Chatelle worked as a Gaming Auditor and was stationed at Ocean Downs Casino ("Ocean Downs") in Berlin, Maryland. (Id.; see Position Description at 48, 53, ECF

---

[1] The Court will construe the Motion as a motion to dismiss. See infra Section II.A.1.

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

No. 4).[3] Ocean Downs is a ten-minute drive from Chatelle's home at the time. (Am. Compl. ¶¶ 2, 17).

In 2018, Chatelle became interested in engaging in dating another Ocean Downs employee (the "Casino Employee") and requested permission from her supervisor to do so. (Id. ¶ 18). Her supervisor advised her to request permission from the State Ethics Commission (the "Commission"). (Id.). Chatelle did so, and the Commission granted her permission "to engage in out of work activities with" the Casino Employee. (Id.). In September 2019, Chatelle asked a Commission representative via phone whether she could marry the Casino Employee and continue to work at Ocean Downs. (Id. ¶ 21). The Commission representative advised Chatelle to check with the MLGCA ethics department. (Id.). When she did so, MLGCA's Organization Compliance Director, James Butler, instructed Chatelle to obtain written approval from the Commission. (Id. ¶¶ 22–23).

At some point over the following weeks, Chatelle's manager, Sonia Portillo, and the department director, Michael Eaton, became aware of Chatelle's plan to marry the Casino Employee. (Id. ¶ 24). They informed Chatelle that it would not affect her work location and would require only "minor adjustments for audits Chatelle could not do." (Id.). On October 6, 2019, Chatelle married the Casino Employee. (Id. ¶ 25). Just three days later,

---

[3] The electronic document accessible at ECF No. 4 contains Chatelle's original Complaint and several exhibits to the Complaint, which Chatelle has incorporated by reference into her Amended Complaint. (See, e.g., Am. Compl. ¶ 41). The Position Description document may be found at pp. 48–53 of the combined PDF document accessible at ECF No. 4. References to exhibit page numbers refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

on October 9, 2019, the Commission emailed Butler and Chatelle to inform them that Chatelle could not continue to work at Ocean Downs in light of her marriage. (Id. ¶ 29; see also Commission Op. at 30–31, ECF No. 4).

At some point in October 2019, Chatelle learned that another MLGCA employee stationed at Ocean Downs, a white male Casino Compliance Representative ("CCR") named Adam Milchak, was married to a bartender at Ocean Downs. (Am. Compl. ¶¶ 26, 28; Def.'s Resp. Letter at 41, ECF No. 4). Milchak's spouse's duties as a bartender included cashier and alcohol distribution duties. (Id. ¶ 28). CCR duties include surveilling, observing, and reporting intoxicated patrons and "'other duties' such as cashier behaviors." (Id. ¶ 27). After Chatelle received the Commission Opinion, she responded by notifying the Commission of Milchak and his spouse and the similarities between their relationship and her own. (Id. ¶ 30).[4] Chatelle requested an appeal of the Commission determination but never heard back regarding whether such an appeal was possible. (Id. ¶ 32).

On October 11, 2019, MLGCA asked Chatelle whether she would prefer to be transferred to the Hollywood Casino in Perryville, Maryland (the "Hollywood") or the Horseshoe Casino in Baltimore, Maryland (the "Horseshoe"). (Id. ¶¶ 33, 37). Chatelle expressed a preference for the Horseshoe, which would allow her to stay at her mother's home nearby until she found permanent housing. (Id. ¶ 33).

---

[4] On February 10, 2020, the Commission informed MLGCA that Milchak's ongoing work at Ocean Downs, in light of his relationship with an Ocean Downs employee, created an impermissible conflict of interest. (Def's Resp. Letter at 41). As of February 13, 2020, MLGCA was "working on a compliance plan" to address the situation. (Id.).

On October 15, 2019, Chatelle informed Portillo and Butler of her view that MLGCA's disparate treatment of her and Milchak could constitute discrimination. (Id. ¶ 34). That same day—the order of these events is not clear from the Amended Complaint—Portillo and Butler informed Chatelle that MLGCA had reassigned her to the Hollywood. (Id. ¶ 37). The Hollywood was located about 135 miles from Chatelle's home, which would require a drive of over two hours and additional toll costs. (Id.). In addition to the challenges anyone would have in enduring such a commute, Chatelle had a back injury that made such long drives intolerable. (Id. ¶¶ 14–16, 37). MLGCA knew of her back injury. (Id. ¶ 16).

During a second October 15, 2019 phone call with Portillo and Butler, Portillo instructed Chatelle to report to MLGCA headquarters the following day. (Id. ¶ 38). Instead of following this direction, Chatelle emailed her resignation later that afternoon. (Id. ¶ 45; see Resignation Email at 28, ECF No. 4). In response, MLGCA placed her on administrative leave on October 16, 2019, through her last date of employment on November 4, 2019. (Am. Compl. ¶ 47). Chatelle alleges that her treatment constitutes "employment discrimination based on unlawful retaliation, disparate treatment and constructive discharge, whistleblowing, and race, marital status, and gender discrimination." (Id. ¶ 1).

## B.   **Procedural Background**

Chatelle filed a charge with the Equal Employment Opportunity Commission on December 16, 2019. (Id. ¶ 51). Chatelle received her right-to-sue letter on March 4, 2021. (Id. ¶ 13). Chatelle filed her initial Complaint with the Circuit Court for Worcester County,

Maryland, on May 25, 2021. (ECF No. 4). MLGCA removed the case to this Court on July 12, 2021. (ECF No. 1).

Chatelle's five-count Complaint alleges: discrimination on the basis of gender (Count I); discrimination on the basis of race (Count II); retaliation (Count III); "[w]histleblower" (Count IV); and intentional race discrimination in violation of 42 U.S.C. § 1981 (Count V). (Id. ¶¶ 55–96). While Chatelle does not identify the statutory or other source for the first four counts, she does so elsewhere in the Amended Complaint:

> The nature of the action is covered by Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C.[] § 1981 and 42 U.S.C.[] § 2000, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606, and the Maryland Personnel and Pensions law, Md. Code Ann., 28 U.S.C. § 1331 State Gov't § 5-301.

(Am. Compl. ¶ 5). From this, the Court can infer that Chatelle asserts her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-600 et seq. ("MFEPA"); and 42 U.S.C. § 1981. The Court can further infer that Chatelle intends to bring her whistleblower claim under the Maryland Whistleblower Law, Md. Code Ann., State Pers. & Pens. ("SPP") § 5-300 et seq. ("MDWL"). The Amended Complaint seeks declaratory and injunctive relief, economic, liquidated, compensatory, and punitive damages, attorneys' fees and costs, and prejudgment interest. (Am. Compl. at 16–21).

On October 14, 2021, MLGCA filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21). Chatelle filed an Opposition on

November 10, 2021, (ECF No. 23), and on December 17, 2021, MLGCA filed a Reply (ECF No. 26).

## II.     DISCUSSION

### A.     Standard of Review

#### 1.     Conversion

MLGCA styles its Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the court's discretion under Rule 12(d)." <u>Pevia v. Hogan</u>, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on

notice that conversion under Rule 12(d) may occur. See <u>Moret v. Harvey</u>, 381 F.Supp.2d 458, 463–64 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." <u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)). To satisfactorily raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." <u>Hamilton v. Mayor & City Council of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trs., Craven Cmty. Coll.</u>, 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature, notwithstanding the non-movant's failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Chatelle argues that it would be premature to construe MLGCA's Motion as one for summary judgment because she has not had a reasonable opportunity for discovery. Chatelle accompanies her Opposition with a Rule 56(d) affidavit in which she sets forth several categories of discovery she asserts could establish a genuine issue of material fact in this dispute. The Court is persuaded that, but for the fatal defect in Chatelle's claim set forth in greater detail below, Chatelle has identified categories of discovery that could establish one or more genuine issues of material fact. (ECF No. 23-1).[5] For instance,

---

[5] Chatelle characterizes the affidavit as being filed under Md. Rule 2-501(d), but it substantially mirrors the contents of a Rule 56(d) affidavit.

Chatelle seeks information about how MLGCA treated other employees with conflicts of interest and communications between MLGCA and the Commission concerning Chatelle. In addition, Chatelle seeks information that could establish knowledge on the part of MLGCA that it knew of her preference to work at the Horseshoe. This information could assist Chatelle in establishing the causation and adverse action elements of her claims. Accordingly, the Court will construe MLGCA's Motion as a motion to dismiss under Rule 12(b)(6) and will not consider the various documents MLGCA attached to its Motion in reaching a decision.

### 2.      Rule 12(b)(6) Standard

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, "the complaint must allege sufficient facts to establish [each] element. Goss v. Bank of Am.,

N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions "couched as factual allegations", Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.     Analysis**

MLGCA advances three arguments in support of its Motion: (1) Chatelle fails to identify a viable adverse action in support of any of her claims; (2) Chatelle does not identify a similarly situated comparator to support an inference of causation for any of her claims; and (3) Chatelle's whistleblower claim must fail because she did not exhaust her administrative remedies. The Court will first outline the legal framework applicable to Chatelle's claims and then address each of MLGCA's arguments in turn.

**1.     Legal Framework**

Chatelle brings her discrimination and retaliation claims under Title VII, MFEPA, and 42 U.S.C. § 1981. Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-

2(a)(1). Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).[6]

The Amended Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Chatelle's claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7]

---

[6] Unless otherwise noted, the Court's Title VII analysis applies equally to Chatelle's claims under MFEPA and 42 U.S.C. § 1981. See Finkle v. Howard Cnty., 12 F.Supp.3d 780, 784 (D.Md. 2014) ("FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." (citing Haas v. Lockheed Martin Corp., 914 A.2d 735, 742 (Md. 2007))); Proa v. NRT Mid Atl., Inc., 618 F.Supp.2d 447, 461 (D.Md. 2009) ("Although Title VII and § 1981 claims rest on distinct legal theories, ordinarily, courts apply the same analyses, including the [McDonnell Douglas] burden-shifting regime . . . to employment-based claims under both theories."), aff'd, 398 F.App'x 882 (4th Cir. 2010).

[7] "The McDonnell Douglas framework was initially developed for Title VII discrimination cases, but since the McDonnell Douglas decision, the framework has been

To establish a discrimination or retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework, Chatelle must <u>eventually</u> put forth a prima facie case by establishing that "(1) [s]he belongs to a protected class; (2) [s]he suffered an adverse employment action; (3) at the time of the adverse action, [s]he was performing [her] job at a level that met [her] employer's legitimate expectations . . . ; and (4) [s]he was rejected under circumstances giving rise to an inference of unlawful discrimination." <u>Adams v. Trs. of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 558 (4th Cir. 2011). Although the precise formulation of the required prima facie showing will vary in "differing factual situations," <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13, the plaintiff in an employment discrimination suit is generally required to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

### 2. Adverse Action

MLGCA contends that Chatelle's discrimination and retaliation claims must fail because she fails to adequately allege that she suffered an adverse action. While all Chatelle's claims require that she allege and eventually establish that she experienced an adverse employment action, the standard of what constitutes an "adverse action" differs with respect to her discrimination and retaliation claims. At bottom, the Court finds that Chatelle has adequately alleged an adverse action and will decline to dismiss on this basis.

---

held to apply in . . . retaliation cases under Title VII and § 1981." <u>Sanders v. Tikras Tech. Sols. Corp.</u>, 725 F.App'x 228, 229 (4th Cir. 2018) (citations omitted).

For purposes of a Title VII discrimination claim, an "adverse employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). In other words, the plaintiff must show that the action "adversely affect[ed] the terms, conditions, or benefits of the plaintiff's employment." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999); see also James, 368 F.3d at 376 (describing the circumstances under which a reassignment may constitute an adverse action for the purposes of a Title VII claim).

In the context of a Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). In general, reassignments, transfers, or changes to an employee's job responsibilities without a decrease in pay are not adverse employment actions unless they have a "'significant

detrimental effect' on his opportunities for promotion or professional development."
James, 368 F.3d at 376 (quoting Boone, 178 F.3d at 256).

A constructive discharge, of course, would constitute an adverse action under either
framework. See Green v. Brennan, 136 S.Ct. 1769, 1776 (2016) (finding that a constructive
discharge may serve in a discrimination claim as the "matter alleged to be discriminatory");
Lloyd v. Riveredge Operating Co., No. GLR-20-3162, 2021 WL 2550495, at *4 (D.Md.
June 21, 2021) ("[C]onstructive discharge is an adverse action which can fulfill that
element of her discrimination or retaliation claims."); Bauer v. Holder, 25 F.Supp.3d 842,
853 (E.D.Va. 2014) ("[A] constructive discharge . . . qualifies as an adverse action under
Title VII."), vacated on other grounds sub nom., Bauer v. Lynch, 812 F.3d 340 (4th Cir.
2016). Chatelle contends that her transfer to Hollywood constituted a constructive
discharge. (See Am. Compl. ¶¶ 1, 58, 64, 68, 79, 90). At bottom, the Court agrees.

To establish a constructive discharge, "a plaintiff must show 'that [s]he was
discriminated against by h[er] employer to the point where a reasonable person in h[er]
position would have felt compelled to resign' and that she actually resigned." Evans v. Int'l
Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (quoting Green, 136 S.Ct. at 1777). The
conditions must go "beyond 'ordinary' discrimination." Id. (quoting Penn. State Police v.
Suders, 542 U.S. 129, 147 (2004)). Courts evaluating constructive discharge claims must
consider whether a plaintiff's workplace was so intolerable that she was compelled to
resign under an objective, "reasonable person" standard. Heiko v. Colombo Sav. Bank,
F.S.B., 434 F.3d 249, 262 (4th Cir. 2006). "However, mere dissatisfaction with work
assignments, a feeling of being unfairly criticized, or difficult or unpleasant working

conditions are not so intolerable as to compel a reasonable person to resign." <u>Id.</u> (quoting <u>James</u>, 368 F.3d at 378). Moreover, "[i]n assessing intolerability, the frequency of the conditions at issue is important." <u>Evans</u>, 936 F.3d at 193. Thus, "[t]he more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." <u>Id.</u> Finally, the Fourth Circuit has advised that courts should consider "the totality of the circumstances" in determining whether a resignation was, in fact, a constructive discharge. <u>See</u> <u>Bodkin v. Town of Strasburg</u>, 386 F.App'x 411, 413 (4th Cir. 2010).

Here, Chatelle alleges that her immediate transfer to Hollywood was practically impossible. It would require a "new one-way commute time [of] well over three hours more than Chatelle had when stationed at" Ocean Downs. (Am. Compl. ¶ 43). Even setting aside Chatelle's back problems, which exacerbate the situation, such a commute is "so intolerable as to compel a reasonable person to resign." <u>Heiko</u>, 434 F.3d at 262. Thus, while the parties spill much ink about whether a transfer can constitute an adverse employment action, there is no question to this Court that in some cases, it can. <u>See, e.g.</u>, <u>Willar v. Esper</u>, No. GLR-19-2785, 2020 WL 6784470, at *10 (D.Md. Nov. 18, 2020) (finding that transferring an individual to a different facility that would render an employee's commute impracticable may constitute an actionable adverse action).

MLGCA contends that transferring Chatelle cannot be an adverse action where the transfer was essentially required by dint of the Commission's decision that Chatelle's marriage constituted a conflict of interest. But the issue is not <u>that</u> she was transferred, but

15

rather <u>where</u> she was transferred. Chatelle alleges that the Horseshoe would have represented a far superior new assignment for her and that she made that preference clear to MLGCA. Despite that, MLGCA chose to reassign Chatelle to the Hollywood, which was not just less convenient, but essentially untenable. That action, as alleged, constitutes a constructive discharge and is sufficient to withstand MLGCA's Motion.[8]

### 3.    Similarly Situated Comparator

As set forth above, a plaintiff seeking to establish that she was the victim of workplace discrimination must establish that she "was rejected under circumstances giving rise to an inference of unlawful discrimination." <u>Adams</u>, 640 F.3d at 558. This element can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." <u>White v. BFI Waste Servs., LLC</u>, 375 F.3d 288, 295 (4th Cir. 2004). MLGCA contends that Chatelle failed to provide the Court with circumstances giving rise to an inference of discrimination or retaliation by failing to identify a similarly situated comparator. Specifically, MLGCA contends that Milchak cannot serve as a comparator because Chatelle has not alleged that she and Milchak share a supervisor. At bottom, the Court agrees and will dismiss Chatelle's discrimination and retaliation claims for this reason.

As an initial matter, the Court is mindful that it must construe self-represented actions liberally. <u>Erickson</u>, 551 U.S. at 94; <u>see</u> <u>Spencer v. Earley</u>, 278 F.App'x 254, 259–

---

[8] The Court notes that to the extent any of the extra-pleading evidence MLGCA submitted in conjunction with its Motion contradicts Chatelle's allegations, such evidence is not properly before the Court. <u>See</u> <u>supra</u> Section II.A.1.

60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '<u>beyond doubt</u> that the plaintiff can prove <u>no set of facts</u> in support of his claim which would entitle him to relief.'" (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972))). It is also true a Title VII plaintiff need not articulate a prima facie case to survive a motion to dismiss. <u>See</u> <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 510 (2002) ("The prima facie case under <u>McDonnell Douglas</u>, however, is an evidentiary standard, not a pleading requirement."); <u>accord</u> <u>Parker v. Child.'s Nat'l Med. Ctr., Inc.</u>, No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). "Moreover, the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" <u>Swierkiewicz</u>, 534 U.S. at 512 (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" <u>Bing</u> <u>v. Brivo Sys., LLC</u>, 959 F.3d 605, 617 (4th Cir. 2020) (quoting <u>Coleman v. Md. Ct. of</u> <u>Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010)), <u>cert. denied</u>, 141 S.Ct. 1376 (2021).

The Court considers the "totality of the circumstances" in determining whether Chatelle has adequately alleged discriminatory intent. <u>See</u> <u>Strothers v. City of Laurel</u>, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); <u>see also</u> <u>Woods v. City of Greensboro</u>, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant");

<u>Guirkin v. CMH Physician Servs., LLC</u>, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [Plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [Plaintiff] was fired, at least in part, because of his [protected status].").

Notwithstanding these qualifiers and assurances of holistic review, the problem with the Amended Complaint is that the <u>only</u> allegations it contains that could support an inference of discriminatory intent are those allegations relating to Chatelle's purported comparator. To the extent they intend to rely on comparator evidence, plaintiffs in the Fourth Circuit demonstrate that they are similarly situated with a comparator "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" <u>Tinsley v. City of Charlotte</u>, 854 F.App'x 495, 500–01 (4th Cir. 2021) (quoting <u>Haynes v. Waste Connections, Inc.</u>, 922 F.3d 219, 223–24 (4th Cir. 2019)).

As suggested by the first factor, this Court has repeatedly held that a valid comparator for the purposes of a discrimination or retaliation claim must have the same supervisor. <u>See, e.g.</u>, <u>Hurst v. District of Columbia</u>, No. PWG-12-2537, 2015 WL 1268173, at *4 (D.Md. Mar. 16, 2015) ("[W]ithout showing that the comparators had the same supervisor, Plaintiff has failed to show that they were similarly situated."), <u>aff'd</u>, 681 F.App'x 186 (4th Cir. 2017). Here, the Amended Complaint contains no allegations concerning the identity of Milchak's supervisor. For this reason, Chatelle has not

18

established that Milchak can serve as a comparator to support her claims of discrimination and retaliation. Further, the cases Chatelle cites in her Opposition regarding the comparator issue are inapposite because in those cases, the courts relied on other evidence to establish discriminatory intent. Here, no such other evidence exists.

As a result, and in light of the fundamental deficiency in Chatelle's comparator allegations, the Court cannot find that the Amended Complaint contains sufficient allegations of causation to survive MLGCA's Motion. Accordingly, the Court will dismiss Chatelle's claims of discrimination and retaliation.[9]

### 4.    Administrative Exhaustion

Finally, MLGCA argues that the Court must dismiss Chatelle's MDWL claim because she failed to exhaust administrative remedies. The Court agrees. Under the MDWL, "a supervisor . . . may not take or refuse to take any personnel action as a reprisal" against an employee reporting misconduct. SPP § 5-305. "An employee . . . who seeks relief for a violation of § 5-305 of this subtitle may elect to file: (1) a complaint under § 5-309 of [the MDWL]; or (2) a grievance under Title 12 of" the State Personnel and Pensions Article. SPP § 5-307(a). An employee filing a complaint under SPP § 5-309 must file the complaint with the Maryland Secretary of Budget and Management "within 6 months after the complainant first knew of or reasonably should have known of the violation." SPP § 5-309(a).

---

[9] Chatelle's argument that MLGCA failed to address certain of her counts in its Motion misses the mark. As set forth supra in Section II.B.1, MLGCA's arguments applied equally to all of Chatelle's claims of discrimination and retaliation.

The Amended Complaint contains no allegations that Chatelle filed a § 5-309 complaint. Chatelle argues that she initiated the Title 12 grievance process when she sent a complaint "alleg[ing] retaliation, whistle blower, gender, and ethnic/race discrimination" to certain unnamed officials at MLGCA. (Am. Compl. ¶¶ 10–11; see Opp'n at 27). But this allegation is insufficient because it is entirely unclear from the allegations in the Amended Complaint whether Chatelle complied with the specific grievance steps set forth in Title 12. See SPP § 12-203 (setting forth grievance procedures and deadlines). What the allegations in the Amended Complaint do make clear, however, is that such a grievance would have been untimely in any event. See id. § 12-203(b) (providing that grievances must be filed within twenty days after "the occurrence of the alleged act that is the basis of the grievance"). Chatelle filed her internal grievance on December 13, 2019. (Am. Compl. ¶ 11). Of course, December 13, 2019, is far more than twenty days after October 15, 2019, or even November 4, 2019, the date on which Chatelle's employment ended. Accordingly, the Court finds that Chatelle failed to exhaust her administrative remedies with respect to her MDWL claim and that it must be dismissed.[10]

---

[10] Chatelle's reference in her Opposition to common law whistleblower claims is similarly unpersuasive. As an initial matter, it is clear from the reference to the MDWL in the Amended Complaint that Count IV intended to state a MDWL claim, not a common law wrongful discharge in violation of public policy claim. Further, even construing the Amended Complaint liberally, Chatelle cannot state a common law whistleblower claim where there is already a statutory basis for relief. See Familia v. High, No. TDC-21-1139, 2022 WL 899747, at *7 (D.Md. Mar. 28, 2022) (holding that a common law wrongful discharge claim "will not lie if [a] statute provides a civil remedy that would render relief via a wrongful discharge action duplicative" (quoting Porterfield v. Mascari II, Inc., 823 A.2d 590, 603 (Md. 2003))). Here, of course, Title VII, MFEPA, and 42 U.S.C. § 1981 provide remedies for Chatelle's claims of discrimination and retaliation, and the MDWL

### III.        CONCLUSION

For the foregoing reasons, the Court will grant MLGCA's Motion to Dismiss or, in

the Alternative, for Summary Judgment (ECF No. 21). A separate Order follows.

Entered this 25th day of July, 2022.


                                   _____/s/_____.
                                   George L. Russell, III
                                   United States District Judge

---

provides a remedy for her allegations of whistleblower reprisal. Accordingly, she cannot
advance a common law whistleblower retaliation claim.